## Commonwealth vs. Mohammad Bachir.

No. 95-P-1455.

Norfolk. November 25, 1997. - July 17, 1998.

Present: Brown, Smith, & Laurence, JJ.

*Parental Kidnapping. Protective Order. Evidence,* Cumulative evidence. *Practice, Criminal,* Duplicative convictions, Assistance of counsel.

At a criminal trial, the admission in evidence of certain statements made by the defendant to State troopers was harmless beyond a reasonable doubt, where such statements were either voluntarily made or cumulative of other incriminating evidence properly before the jury. [209]

Principles of double jeopardy did not prohibit a criminal defendant's convictions of and consecutive sentences for parental kidnapping and violation of a restraining order, where each conviction was based on a separate and distinct act of the defendant, where the elements of the crimes were not the same, and where neither crime was a lesser included offense of the other. [209-210]

At the trial of indictments for parental kidnapping and violation of a restraining order, defense counsel's failure to file a motion for a required finding of not guilty, based on the alleged lack of personal service of the extended restraining order on the defendant, did not constitute ineffective assistance of counsel, inasmuch as personal service of the extended order was not required where the defendant had been served with the temporary order. [210-211]

Indictments found and returned in the Superior Court Department on September 7, 1994.

A pretrial motion to suppress was heard by *Barbara A. Dortch-Okara,* J., the cases were tried before her, and a motion to vacate the convictions and sentences was heard by her.

*Edward J. O'Brien* for the defendant.

*Judith B. Stephenson,* Assistant District Attorney, for the Commonwealth.

Smith, J. The defendant was indicted for parental kidnapping (G. L. c. 265, § 26A), and for violating a restraining order (G. L. c. 209A). Later, he was also indicted for intimidation of a witness (G. L. c. 268, § 13B).

Prior to trial, the defendant filed a motion to suppress statements that he had made to the police. After an evidentiary hearing, a Superior Court judge denied the defendant's motion. A jury found the defendant guilty of parental kidnapping and of violating G. L. c. 209A, and not guilty of intimidation of a witness. The defendant was sentenced to M.C.I., Cedar Junction, on the parental kidnapping conviction. On the conviction of violating the G. L. c. 209A order, the defendant received a sentence to a house of correction, to be served on and after the other sentence. He filed a timely notice of appeal. Later, he filed a motion to vacate his convictions and sentences, pursuant to Mass.R.Crim.P. 30(a), 378 Mass. 900 (1979), claiming that his convictions were duplicative. The trial judge denied the motion, and the defendant filed a notice of appeal from the denial. The defendant's two appeals have been consolidated.

On appeal, the defendant claims that the judge committed error in denying his motion to suppress. He also contends that his conviction and sentence for violating the G. L. c. 209A order should be vacated because the elements of that crime were included in the parental kidnapping indictment. Finally, the defendant claims that he was denied the effective assistance of counsel because his trial attorney failed to file a motion for a required finding of not guilty on both indictments.

We summarize, as background, the facts introduced by the Commonwealth, reserving further details for discussion with the relevant issues. Molly Scharlach and the defendant are the parents of Michael, born on April 21, 1986. The defendant and Molly moved constantly during their relationship, including several moves to Lebanon, as well as to Egypt, Yugoslavia, Turkey, Greece, and various locations in the United States. In September, 1992, while they lived in Cambridge, Molly left the defendant and she and Michael moved to Quincy.

On September 24, 1992, Molly obtained a restraining order against the defendant pursuant to G. L. c. 209A. Molly received temporary custody of Michael, and the defendant was ordered to refrain from contacting Michael or Molly, either in person or by telephone, at home or at work. The order was extended on October 2, 1992, for a year, until September 28, 1993.

After Molly left the defendant, he repeatedly telephoned Molly's mother in California in an attempt to learn where Molly was living. Because the defendant called as many as thirty times a day, Molly's mother installed an answering machine.

The mother gave law enforcement officers tapes from the answering machine which had been recorded immediately preceding Michael's disappearance. On a tape recorded November 12, 1992 (one day before Michael's abduction), the defendant called Molly's mother and asked what Molly's intentions were. The mother told him that there was a restraining order against him and that Molly was not going back to him. The defendant replied, "I don't know what I'm going to do. I'm going to do something very bad. I'm not going to let nobody take my son . . . ."

The next day (November 13, 1992), the defendant hired a taxi driver whom he directed to drive to Quincy. There, they stopped at a Dunkin Donuts and waited for fifteen to twenty minutes. A school bus then drove by, and the defendant directed the taxi driver to follow the bus. When the bus stopped at an elementary school, the defendant got out and told the driver that he was going to pick up his son. A short time later, he returned with a child who was holding his hand. The child was Michael, then six years old.

The defendant directed the taxi driver to proceed to Rhode Island. There, the defendant telephoned Molly's aunt. He told her that he was taking Michael "to where people love him." He allowed Michael to talk to her. After stops in Connecticut and New York, the defendant directed the driver on to Atlantic City. Upon arrival, he discharged the taxi driver, who returned to Massachusetts and later identified the defendant as the person who had hired him and had taken the child from school.

The Federal Bureau of Investigation, the State Department, the Immigration and Naturalization Service, and Interpol became involved in the investigation into the abduction of Michael. Despite their efforts, neither the defendant nor the child were located for a number of months. At the time of trial, the son was living in a Palestinian refugee camp in southern Lebanon.

On December 4, 1992, Molly's mother received two telephone calls from the defendant, who said he was in Lebanon with Michael. The defendant said Michael was in a Palestine Liberation Organization refugee camp. In February, 1993, the defendant called Molly to say that their son was seriously ill and could not walk. Molly went to Lebanon with the goal of bringing her son home, but the defendant's family stopped her. After a year of living in Lebanon, Molly returned home without her son.

On August 29, 1994, the defendant arrived at John F. Kennedy (JFK) airport in New York and was arrested on a Massachusetts fugitive warrant for parental kidnapping. A New York Port Authority police officer transported the defendant to the JFK airport police station. The officer read the defendant the Miranda warnings and the defendant responded that he understood those warnings and was willing to answer questions. The defendant admitted that he had taken his son to Lebanon and that he was making arrangements with the FBI to return him.[1]

At trial, the defendant testified in his own defense and denied that he had taken his son from school. He testified that, instead, he was in California on the day that his son disappeared and that he later travelled to Lebanon, where he found the boy.

1. *Denial of the defendant's suppression motion.* The defendant filed a motion requesting, among other things, that certain statements he made to two Massachusetts State troopers be suppressed. The defendant argued that admission of his statements violated his right to have counsel present as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. After an evidentiary hearing, a Superior Court judge allowed the motion in part[2] and denied it in regard to his statements to the troopers.

We summarize the judge's findings of fact. After the defendant was arrested at JFK airport, two State troopers were sent from Massachusetts to bring the defendant back to the Commonwealth. At his rendition hearing in New York, the defendant was represented by counsel who advised him not to speak to the troopers about the case on the ride to Mas-

---

[1]The New York Port Authority police officer was a late addition to the Commonwealth's witness list. He was added well after the hearing on the defendant's original suppression motion. At trial, the defendant made a motion requesting that the police officer's testimony concerning statements the defendant had made to him be suppressed. After a voir dire, the judge denied the defendant's motion. On appeal, the defendant does not claim that the judge's action concerning that suppression motion was error.

[2]In his motion, the defendant also asked that his conversations with his attorney be suppressed on the ground that the communications were protected by the attorney-client privilege; the judge allowed that portion of the suppression motion. The defendant also moved that certain out-of-court and in-court identifications be suppressed; the judge denied that request. The defendant has not raised any issue on appeal concerning the identifications of him by the taxicab driver.

sachusetts. The judge presiding at the rendition hearing also ordered the troopers not to discuss the case with the defendant while transporting him.

After the hearing the troopers brought the defendant by automobile to Massachusetts. While travelling through Connecticut, the defendant began conversing with the troopers. First, he asked them why he was being transported by automobile rather than by air. One of the troopers responded that the defendant was not a candidate to fly because of his recent suicide attempt and his resulting admission to Bellevue Hospital for a psychiatric examination.[3]

When the defendant proceeded to give the details of his hospitalization, one of the troopers immediately stopped him and told the defendant that they could not speak to him about his case. The defendant informed the troopers that he did not have any problems talking about the case and that anything he was going to tell them would be the same "thing" he would testify to in court.

At this point, one of the troopers repeated the Miranda warnings to the defendant. The defendant indicated that he understood the warnings and that he wished to talk. One of the troopers asked the defendant where Michael was, and the defendant replied that his son was fine and that arrangements were being made for Michael to be sent to California. The defendant also told the troopers that he was not aware that a restraining order was in effect when he left Massachusetts. When asked why he had not informed anyone that he was taking the child from the school, the defendant replied that he had told the school principal.

In denying the defendant's suppression motion, the judge ruled that the defendant had been informed of his Miranda rights, that he had made a voluntary, knowing waiver of those

---

[3]After he was arrested at the airport, the defendant was transported to the airport's police station, where he was allowed to make a telephone call. He called Molly. When told he could not make another telephone call, the defendant unexpectedly banged his head against the jail cell wall, put his hands around his neck, and threatened to kill himself. He was sent to Bellevue Hospital for observation.

According to the trooper, airlines will not allow a person to be handcuffed or otherwise restrained while in an airplane. Because of the defendant's suicide attempt, the trooper believed that the defendant was not a candidate to fly unrestrained.

rights, and that his waiver of his Miranda rights did not result in a violation of his Sixth Amendment rights.

On appeal, the defendant argues that the judge's ruling was erroneous, because (1) the defendant, through his New York lawyer and the New York State judge, had invoked his right to counsel; (2) the troopers deliberately created a situation (by transporting him by automobile rather than airplane) designed to give them an opportunity to confront the defendant without counsel; and (3) the defendant did not validly waive his right to counsel. Accordingly, the defendant claims that his right to counsel guaranteed by the Sixth Amendment and by art. 12 of the Declaration of Rights was violated.

Some of the statements made by the defendant to the troopers were voluntary and, therefore, admissible, see *Maine* v. *Moulton*, 474 U.S. 159, 176 (1985), while others were made as a result of questions from the troopers. We need not sort out which statements were admissible and which were not, because, even if we assume that the defendant's Sixth Amendment rights were violated, the admission of his statements was harmless beyond a reasonable doubt. *Chapman* v. *California*, 386 U.S. 18, 24 (1967). The statements were "merely cumulative" of the far more incriminating statements the defendant made to Molly's mother, her aunt, and to the New York Port Authority police officer, all of which were properly before the jury. See *Commonwealth* v. *Perrot*, 407 Mass. 539, 548-549 (1990).

2. *The lesser included offense claim.* The defendant claims that his convictions and consecutive sentences on the indictments for parental kidnapping and violation of a G. L. c. 209A restraining order are duplicative because the violation of the c. 209A order was a lesser included offense of parental kidnapping. He claims that the Commonwealth used one act (the taking of Michael) to prove both crimes, and therefore, his constitutional guarantee against double jeopardy, which protects a defendant against multiple punishments for the same act, was violated. We reject the defendant's argument.

Each of the defendant's convictions was based on a separate and distinct act. The defendant's conviction of violating the c. 209A order was based on the defendant's speaking to his son at the school in Quincy. The order specifically forbade the defendant from contacting his son or coming within one hundred yards of him. The defendant's conviction of parental kidnapping was based on evidence that he, without lawful authority, both

took Michael outside of the Commonwealth and exposed him to risk by bringing him to the (at that time) war-torn country of Lebanon.[4] Cf. *Commonwealth* v. *Page*, 42 Mass. App. Ct. 943, 944-945 (1997) (where mayhem and assault and battery were based on separate acts, convictions not duplicative). In addition, the prosecution's closing argument highlighted the different actions constituting each of the defendant's crimes. See *Commonwealth* v. *Mamay*, 407 Mass. 412, 418-419 (1990).

The defendant argues that the judge's instructions allowed the jury to convict the defendant on both indictments on the basis of the single act of "taking" Michael. However, even if the "taking" were the central act of both crimes, the defendant's convictions and sentences would not violate double jeopardy principles. The respective crimes do not share the same elements, and neither crime was a lesser included offense of the other. *Commonwealth* v. *Arriaga*, 44 Mass. App. Ct. 382, 385-389 (1998).

3. *Ineffective assistance of counsel claim.* The defendant claims that he received ineffective assistance of counsel because his trial lawyer failed to file a motion for a required finding of not guilty on both indictments.[5] The defendant also contends that his trial counsel was ineffective for failing to request a jury instruction that proof of service is an element of both crimes and that counsel should have filed a motion to dismiss both indictments because of lack of service.

In *Commonwealth* v. *Delaney*, 425 Mass. 587, 591-592 (1997), cert. denied, 522 U.S. 1058 (1998), the court ruled that if a defendant is served at his last and usual place of abode with a temporary restraining order which states that it may continue

[4]General Laws c. 265, § 26A, as amended by St. 1983, c. 175, makes it a crime for a relative of a child under eighteen years of age, "without lawful authority, [to] hold[] . . . such a child permanently or for a protracted period of time, or [to] take[] . . . such a child from his lawful custodian, . . . [or to] commit[] any offense described in this section by taking or holding said child outside the commonwealth or under circumstances which expose the person taken . . . to a risk which endangers his safety . . . ."

[5]According to the defendant, the Commonwealth failed to introduce sufficient evidence to establish that he had been served with the extension of the restraining order. The defendant's claim that lack of service of an extension of the restraining order also involves the parental kidnapping indictment is based on the court's previous decision that a parent does not violate G. L. c. 265, § 26A, "as long as he or she does not violate a custody order." *Commonwealth* v. *Beals*, 405 Mass. 550, 553-556 (1989). Here, there was a custody order — the restraining order.

in effect for up to one year if he fails to appear at the next hearing, and the order is so extended, personal service of the extended order is not required before the defendant may be prosecuted for violating the G. L. c. 209A order.

Here, there was evidence introduced by the Commonwealth that the defendant had been served in hand with the temporary restraining order. That order contained a hearing date (October 2, 1992) and warned the defendant that "an extended or expanded order may remain in effect for up to one year." The defendant testified that he had been served with the temporary restraining order and had read its contents. On October 2, the defendant failed to appear at the hearing and the temporary order was extended for a year, unchanged, until September 28, 1993. The order, therefore, was in effect on the date the defendant abducted Michael, and there was evidence from Molly's mother and from the defendant himself that he knew of the terms of the extended order. In these circumstances, personal service of the extended order was not required. *Commonwealth v. Delaney, supra.* Therefore, trial counsel was not ineffective for failing to file a motion for a required finding of not guilty.

The defendant's other claims regarding alleged ineffectiveness of counsel are also without merit.

*Judgments affirmed.*