COMMONWEALTH *vs.* DANIEL SILVA.

Essex. November 1, 1999. - May 10, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Abuse Prevention. Protective Order. Practice, Criminal,* Required finding. *Evidence,* Hearsay.

Evidence at the trial of a complaint for violation of a protective order, including unobjected to hearsay evidence, was sufficient to warrant the conclusion that the defendant had knowledge of the order and its restrictions on his conduct [404-405], and the jury's consideration of the hearsay testimony did not create a substantial risk of a miscarriage of justice, where the defendant's knowledge of the order was not in issue at trial [405-406]. LYNCH, J., dissenting.

COMPLAINT received and sworn to in the Peabody Division of the District Court Department on July 18, 1997.

The case was tried before *Robert E. Hayes*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Shelley Randall*, Committee for Public Counsel Services, for the defendant.

*Adam J. Bookbinder*, Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendant, Daniel Silva, appeals from his conviction of violating a protective order entered pursuant to G. L. c. 209A, § 4. He claims that the judge erred in denying his motion for a required finding of not guilty. He also claims that hearsay evidence admitted without objection created a substantial risk of a miscarriage of justice. See *Commonwealth v. Alphas*, 430 Mass. 8, 13 (1999). We transferred the case here on our own motion. We conclude that there was sufficient evidence to support the denial of his motion for a required finding and that the admission of the hearsay evidence did not create a substantial risk of a miscarriage of justice. The defendant's conviction is affirmed.

1. *Facts.* The jurors were warranted in finding the following facts. On August 26, 1996, the complainant applied for a G. L. c. 209A protective order against the defendant, with whom the complainant previously had a relationship. On the complaint form, as required, the complainant supplied an address for the defendant. That same day, the judge issued a temporary G. L. c. 209A protective order ex parte, pursuant to G. L. c. 209A, § 4.[1] The temporary order specified that the defendant refrain from abusing the complainant; refrain from contacting the complainant; and stay at least twenty-five yards away from the complainant, even if she seemed to allow or request contact.[2] The temporary order also contained notification that a hearing on the complaint would be held on September 9, 1996.

On August 27, 1996, a police officer served a copy of the temporary order, along with a summons to appear at the scheduled hearing, by delivering the papers to the address that the complainant had given as the defendant's. On the return of service, the officer indicated that service was made by "leaving a copy at the [d]efendant's last and usual address as shown in this [o]rder." The officer also made the following handwritten notation: "copy given to his mother, Jeannette M. Silva . . . was related [*sic*] she would give to defendant who is already aware of this 209A."

On September 9, 1996, the defendant failed to appear at the scheduled hearing. The judge, as mandated by statute, extended the temporary order, setting September 8, 1997, as the expiration date. See G. L. c. 209A, § 4.

In July, 1997, while the G. L. c. 209A order remained in ef-

---

[1]General Laws c. 209A, § 4, provides, in relevant part: "Upon the filing of a complaint under this chapter, the court may enter such temporary orders as it deems necessary to protect a plaintiff from abuse . . . .

"If the plaintiff demonstrates a substantial likelihood of immediate danger of abuse, the court may enter such temporary relief orders without notice as it deems necessary to protect the plaintiff from abuse and shall immediately thereafter notify the defendant that the temporary orders have been issued. The court shall give the defendant an opportunity to be heard on the question of continuing the temporary order and of granting other relief as requested by the plaintiff no later than ten court business days after such orders are entered. . . .

"If the defendant does not appear at such subsequent hearing, the temporary orders shall continue in effect without further order of the court."

[2]In the extended order, the defendant was ordered not to approach within one hundred yards of the complainant.

fect, the defendant and the complainant resumed their relationship. On July 17, the two, along with a mutual friend, went to a restaurant. According to the complainant, the defendant became angry with her and threw food at her. The complainant also alleged that, outside the restaurant, the defendant hit her on the side of the face. The complainant then telephoned the police, who observed the defendant yelling at the complainant from a distance of twenty to thirty feet. After interviewing the complainant about the incident at the restaurant, a police officer arrested the defendant.

The defendant was charged with assault and battery, under G. L. c. 265, § 13A, and with violating a protective order, under G. L. c. 209A, § 7.[3] At trial, the police officer who served the G. L. c. 209A order testified without objection as to the notation he made on the return of service about Jeannette Silva's statements. A jury acquitted the defendant on the assault and battery charge and convicted him of violating the G. L. c. 209A order.

2. *Motion for a required finding of not guilty.* The defendant claims that the judge erred in denying his motion for a required finding of not guilty. In reviewing such a claim of error, "we inquire whether the evidence, considered in the light most favorable to the Commonwealth, was sufficient to satisfy a rational trier of fact of the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Coonan,* 428 Mass. 823, 828 (1999); *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979). We therefore begin with a discussion of the essential elements required to sustain a conviction of violating a G. L. c. 209A order.[4]

To establish a violation of G. L. c. 209A, § 7, the Commonwealth must prove that (1) a valid G. L. c. 209A order was entered by a judge and was in effect on the date of the alleged violation; (2) the defendant violated the order; and (3) the defendant had knowledge of the order.[5] See *Commonwealth* v. *Collier,* 427 Mass. 385, 388 (1998); *Commonwealth* v. *Delaney,*

---

[3]General Laws c. 209A, § 7, provides, in relevant part: "Any violation of such order shall be punishable by a fine of not more than five thousand dollars, or by imprisonment for not more than two and one-half years . . . or by both such fine and imprisonment."

[4]The judge correctly instructed the jurors on the elements.

[5]We have distinguished the statutory crime of violating a G. L. c. 209A order from criminal contempt. See *Commonwealth* v. *Delaney,* 425 Mass. 587, 596-597 (1997), cert. denied, 522 U.S. 1058 (1998). In a criminal contempt prosecution, the Commonwealth must prove that the defendant "clearly and

425 Mass. 587, 595 (1997), cert. denied, 522 U.S. 1058 (1998). The defendant complains that the Commonwealth did not offer sufficient evidence on the knowledge element. The evidence was sufficient on the other two elements. The defendant did not contest the fact that there was a valid restraining order. On the second element, the defendant suggested that he was not at fault for the violation of the G. L. c. 209A order because the complainant came to him.

At trial, Officer DeRosa testified that he served the G. L. c. 209A order, the complaint, and the summons by leaving the papers at the address indicated on the order with a woman, Jeannette Silva, who said that she was the defendant's mother. Officer DeRosa testified that Jeannette Silva said that she would give the order to the defendant. Officer DeRosa also testified that Jeannette Silva told him that the defendant was already aware of the order. The defendant did not object to the introduction of this evidence.[6]

The defendant now correctly maintains, and the Commonwealth concedes, that the officer's testimony as to Jeannette Silva's statements was hearsay not within any recognized exception. The defendant argues that, if this hearsay is disregarded, the Commonwealth's remaining evidence would not suffice to persuade a rational trier of fact beyond a reasonable doubt that the defendant had knowledge of the G. L. c. 209A order.

Hearsay which is not objected to at trial may be "weighed [by the jury] with the other evidence, and given any evidentiary value which it may possess." *Commonwealth* v. *Keevan*, 400 Mass. 557, 562 (1987), quoting *Mahoney* v. *Harley Private Hosp., Inc.*, 279 Mass. 96, 100 (1932). See P.J. Liacos, Massachusetts Evidence § 8.3, at 476-477 (7th ed. 1999), and cases cited. Because the defendant failed to object when the statement concerning his knowledge of the G. L. c. 209A order was offered, that statement could have been considered by the jury as substantive evidence of his guilt. Bearing in mind that inferences drawn by a jury regarding a defendant's mental state

---

intentionally disobeyed [a court order] in circumstances in which he was able to obey it." *Id.* at 596, quoting *Commonwealth* v. *Brogan*, 415 Mass. 169, 171 (1993). In a prosecution for a G. L. c. 209A violation, on the other hand, the Commonwealth need only prove that the defendant had "knowledge" of the order.

[6]As we discuss, *infra* at 405-406, the decision not to object was consistent with the defendant's strategy at trial.

"need only be reasonable and possible and need not be necessary or inescapable," *Commonwealth* v. *Pucillo*, 427 Mass. 108, 113 (1998), quoting *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980), we conclude that this evidence, if believed, would warrant the conclusion that the defendant had knowledge of the G. L. c. 209A order and its restrictions on his conduct. See *Commonwealth* v. *Delaney*, *supra* at 593 ("Evidence that the ex parte order delivered to the defendant's last and usual address was actually received warrants the conclusion that the defendant had actual knowledge of the terms of the extended order . . ."). The defendant's motion for a required finding of not guilty was, therefore, properly denied.

3. *Request for a new trial.* In an appeal from a criminal conviction, objectionable evidence, although it may have been properly admitted at trial in the absence of an objection, will nevertheless be reviewed "to ascertain whether the jury's consideration of it may have created a substantial risk of a miscarriage of justice." *Commonwealth* v. *Collier*, 427 Mass. 385, 390 n.5 (1998). See *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999). In reviewing the defendant's conviction, we will "not disregard the theory of law on which the parties proceeded at trial." *Commonwealth* v. *Monteagudo*, 427 Mass. 484, 487 (1998), quoting *Commonwealth* v. *Thompson*, 382 Mass. 379, 382 (1981). See *Kagan* v. *Levenson*, 334 Mass. 100, 106 (1956), quoting *Santa Maria* v. *Trotto*, 297 Mass. 442, 447 (1937) ("The theory of law on which by assent a case is tried cannot be disregarded when the case comes before an appellate court for review . . ."). We conclude that, given the defendant's strategy at trial, the jury's consideration of the hearsay testimony did not create a substantial risk of a miscarriage of justice.

Defense counsel chose to try the case on the theory that the victim, not the defendant, caused the violation of the G. L. c. 209A order and that the victim was not credible on the complaint of assault and battery. At trial, the validity of service of the order and the defendant's knowledge of the order and its contents were never in question. Defense counsel did not cross-examine the officer who made service in order to raise doubt about whether the officer served the defendant or about whether the defendant had notice of the order. In closing argument, defense counsel admitted that "[w]e have not contested the fact that there was a restraining order." Even more to the point, defense counsel told the jury that the defendant "was told to

stay a hundred yards away from [the complainant]." In his summation, defense counsel also told the jurors that the evidence from one of the witnesses showed that the defendant and the victim "were not together until she came to him."

The dissent observes that the order prohibited contact with the complainant "even if [she] seems to allow or request contact." From this, the dissent concludes that defense counsel's strategy of attempting to show that it was the complainant who approached the defendant was not reasonable.[7] *Post* at 408-409.

The defendant's strategy at trial was to persuade the jurors that, each time the complainant approached him, he walked away. This strategy was reasonable because the judge instructed the jurors, both at the start of the trial and in his final instruction, that they must find that "*the defendant* violated the order . . . by either abusing [the complainant] or by contacting [the complainant], in violation of the order" (emphasis added). Thus, it was clear to the parties and to the jurors that only an affirmative act by the defendant would support a conviction. We assume that the jurors followed the judge's instructions. *Commonwealth* v. *Rosa*, 422 Mass. 18, 29 (1996).

Given the defendant's trial strategy, defense counsel's decision not to object to hearsay testimony going to other issues was a reasonable tactical decision. See *Commonwealth* v. *Alphas*, *supra* at 13. Because the defendant's knowledge of the order was never at issue, the jurors' consideration of hearsay testimony tending to prove knowledge did not create a substantial risk of a miscarriage of justice. See *id.* It is unfair to the witnesses, to the complainant, and to the Commonwealth to expect the Commonwealth to produce additional evidence on an element that the defendant essentially conceded in order to counter an argument that the defendant never raised.

4. *Conclusion.* There was no error in the denial of the defendant's motion for a required finding of not guilty. The admission of the hearsay evidence as to an uncontested issue was not "sufficiently significant in the context of the trial" to create a substantial risk of a miscarriage of justice. *Com-*

---

[7]We also note that the defendant never specifically made a claim of ineffective assistance of counsel. Because we conclude that there was no substantial risk of a miscarriage of justice, any claim of ineffective assistance of counsel would be without merit. See *Commonwealth* v. *Curtis*, 417 Mass. 619, 634 (1994).

*monwealth* v. *Alphas*, *supra* at 13, quoting *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21 (1986).

*Judgment affirmed.*

LYNCH, J. (dissenting). When the trial record is purged of the erroneously admitted hearsay testimony, see *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 & n.6 (1999), the remaining evidence does not warrant a finding that the defendant had knowledge of the extended 209A order he is charged with violating, an essential element of the offense under G. L. c. 209A, § 7. See *Commonwealth* v. *Collier*, 427 Mass. 385, 388 (1998); *Commonwealth* v. *Delaney*, 425 Mass. 587, 595-596 (1997), cert. denied, 522 U.S. 1058 (1998). That evidence consists of the 209A complaint form and order, both of which provide an address for the defendant, and the testimony of Officer DeRosa that he handed the order to a woman at this address. The record discloses no evidence regarding the source of this address, other than the fact that it first appeared on the 209A complaint that the complainant completed and filed. There was no further testimony or documentary evidence before the jury to establish that the defendant either currently or previously resided at, or had any connection to, that residence. I do not doubt that, under G. L. c. 209A, § 7, as amended by St. 1990, c. 403, § 8, service of a 209A order at an address shown by admissible and competent evidence to be a defendant's "last and usual" address would warrant a reasonable jury in finding that a defendant had knowledge of that order.[1] However, in my judgment, the admissible evidence introduced by the Commonwealth in this case does not, without more, support a reasonable inference that the address to which the officer delivered the 209A order was in fact an address at which the defendant had ever lived or received mail. Accordingly, there was insufficient admissible evidence at trial to warrant a jury's conclusion that the defendant knew of the existence and terms of the 209A order and, therefore, the Commonwealth failed to satisfy its burden of proof on the mens rea of the offense. See *Commonwealth* v. *McGovern*, 397 Mass.

[1]By St. 1990, c. 403, § 8, the Legislature amended G. L. c. 209A, § 7, eliminating the requirement that "service [of a 209A order, complaint, and summons] shall be by delivering a copy in hand to the defendant," and requiring only that such service be "upon the defendant."

863, 867-868 (1986), citing *Commonwealth* v. *Assad,* 19 Mass. App. Ct. 1007, 1008 (1985) ("findings based on legally insufficient evidence are inherently serious enough to create a substantial risk of a miscarriage of justice"). Contrast *Commonwealth* v. *Crosscup,* 369 Mass. 228, 231-233 (1975); *Commonwealth* v. *Lora,* 43 Mass. App. Ct. 136, 143-144 & n.12 (1997) (defendant may be convicted of driving with a suspended license, G. L. c. 90, § 23, without proof of actual knowledge of suspension, on proof that notice of suspension was mailed to operator's "last address" as listed in official records of registrar of motor vehicles, which was provided to registrar by defendant himself).

The court concludes that no substantial risk of a miscarriage of justice exists here because defense counsel's failure to object to the hearsay evidence concerning the defendant's knowledge of the 209A order was a "reasonable tactical decision." *Ante* at 406. The court observes that the defendant argued at trial that the complainant caused the violation of the 209A order by continually approaching him as he walked away, and that, in closing argument, defense counsel stated "[the defendant] was told to stay a hundred yards away from her," thereby, ostensibly, conceding the mens rea of the offense. *Ante* at 405-406.[2] I cannot agree. Because the 209A order entered against the defendant in this case plainly states that the complainant's allowance of or request for contact does not relieve the defendant of his obligation to comply with the order's no-contact provision, I do not understand how counsel's decision to make this unavailing theory of defense the core of the defendant's trial strategy can be construed by the court to have been *reasonable.* Moreover, counsel's statement in closing argument that the defendant "was told" to keep his distance from the complainant appears, when taken in context, not to be a concession that the defendant knew of the 209A order, but rather a summary of the terms of the order, the existence of which counsel had expressly conceded in the immediately preceding sentence. In short, it is inconceivable

[2]The court states that the reasonableness of defense counsel's failure to object to the hearsay testimony is further supported by the defendant's chosen strategy to challenge the complainant's credibility on the charge of assault and battery. *Ante* at 405-406. While it is true that the defendant did dispute the evidence that he had committed this offense, it is hardly reasonable for defense counsel to make this tactic a substitute for challenging the Commonwealth's evidence on an essential element of the wholly separate charge of violating a 209A order.

to me that defense counsel's failure to object to the Commonwealth's use of inadmissible hearsay to prove an essential element of the offense was a deliberate strategy, let alone a "reasonable tactical decision." *Commonwealth* v. *Alphas, supra* at 13, quoting *Commonwealth* v. *Miranda,* 22 Mass. App. Ct. 10, 21 (1986).

I am mindful that our authority to vacate a conviction in a noncapital case under the miscarriage of justice standard — whether that standard is cast in terms of a trial error's material influence on the jury's verdict or the danger that an innocent person has been convicted of a crime — should be exercised with caution and, therefore, rarely.[3] See *Commonwealth* v. *Alphas, supra* at 13; *id.* at 27-28 (Fried, J., concurring, with whom Lynch. J., joined). Here, given the state of the Commonwealth's admissible evidence on the mens rea of the crime, it appears to me not only plausible, but highly likely, that the jury's result might have been otherwise but for the erroneous admission of hearsay testimony concerning the defendant's knowledge of the 209A order and, consequently, that the matter should be remanded for retrial. See *id.* at 13. I, therefore, respectfully dissent.

---

[3] I continue to subscribe to the view that our exercise of this authority should be reserved for instances where a person who is actually, as opposed to merely legally, innocent has been convicted of a crime. See *Commonwealth* v. *Alphas,* 430 Mass. 8, 27-28 (1999) (Fried, J., concurring, with whom Lynch, J., joined). However, where the alleged crime consists of conduct that is not malum in se, but rather conduct (such as standing within a specified distance of another person) that would be lawful but for a valid court order that criminalizes such conduct, and where a defendant's knowledge of that court order has been recognized as a required element of the offense, this distinction collapses. In such an instance, adequate proof, sufficient to support a reasonable inference, that the defendant knew that his otherwise lawful conduct would henceforth be prohibited, is essential to establishing both his legal and actual guilt.