COMMONWEALTH VS. JERRY L. HENDERSON.

Suffolk. March 8, 2001. - May 16, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Practice, Criminal,* Instructions to jury. *Evidence,* Opinion, Relevancy and materiality. *Protective Order. Abuse Prevention. Due Process of Law,* Abuse prevention, Notice.

At the trial of indictments charging interfering with a witness in violation of G. L. c. 268, § 13B, the judge's admission in evidence of the witness's opinion testimony on the issue of the statutory defense of accord and satisfaction, G. L. c. 276, § 55, which was a live issue at trial, did not warrant reversal of the defendant's convictions, where the testimony was relevant and its admission had little, if any, prejudicial effect [159-161]; however, where no view of the evidence subsequently admitted at trial could lead a reasonable jury to find that the defendant intended to enter into an accord and satisfaction with the witness, the judge properly declined to instruct the jury on the matter [157-159].

A criminal defendant convicted of violating a protective order, G. L. c. 209A, § 7, was not denied a meaningful opportunity to be heard on the underlying order, where the defendant received actual notice of the scheduled hearing, knew the order could be extended, and never expressed a desire to exercise his right to be heard. [161-163]

At the trial of indictments charging violation of a protective order, G. L. c. 209A, § 7, the judge properly denied the defendant's motions for required findings of not guilty. [163-164]

INDICTMENTS found and returned in the Superior Court Department on December 11, 1996.

The cases were tried before *Thomas E. Connolly,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Murray A. Kohn* for the defendant.

*Amanda Lovell,* Assistant District Attorney (*Andrea J. Cabral* with her) for the Commonwealth.

IRELAND, J. A Superior Court jury convicted the defendant, Jerry L. Henderson, on four indictments charging wilfully endeavoring to interfere with a witness, G. L. c. 268, § 13B;

eight indictments charging violation of a protective order, G. L. c. 209A, § 7; and one indictment charging assault and battery, G. L. c. 265, § 13A. On appeal, the defendant claims that the judge's failure to instruct the jury on accord and satisfaction and his admission in evidence of opinion testimony warrant reversal of the interfering with a witness convictions. He also contends that convictions under G. L. c. 209A cannot stand because he was denied a meaningful opportunity to be heard on the underlying order. We granted the defendant's application for direct appellate review. Because the defendant received actual notice of the scheduled hearing, knew the order could be extended, and never expressed a desire to exercise his right to be heard, we reject the argument and affirm the convictions under c. 209A. The judge committed no error in his jury instructions and the convictions under G. L. c. 268, § 13B, as well as the assault and battery conviction, are affirmed.

1. *Background.* The victim had a relationship with the defendant from 1991 until 1995. In December, 1995, the two got into an argument that resulted in the defendant's striking the victim in the face. This incident gave rise to the assault and battery charge.[1] While the defendant was incarcerated for an unrelated instance of abuse,[2] the victim sought a temporary protective order pursuant to G. L. c. 209A. As discussed *infra,* the court extended the order for a period of one year. During that time, the defendant remained incarcerated and sent approximately sixty letters to the victim.[3] The content of the letters constituted the main evidence supporting the prosecution's case of interference with a witness. The letters consisted of repeated pleas, some linked to promises of financial compensation or marriage proposals, for the victim to extricate the defendant from both his confinement and the pending criminal

[1]The defendant asked the victim to inform the court that her bruise resulted from a medical condition, rather than from physical contact.

[2]Although unrelated, the abuse was inflicted upon the same victim.

[3]At trial, the Commonwealth produced "ten individual letters and then three separate packets of letters" totaling between fifty and sixty letters in all. The parties agreed to redact certain portions of the correspondence "that would have been more inflammatory than probative."

sanctions. Although the content of the letters is further discussed below, we set out samples in the margin.[4]

2. *Accord and satisfaction instruction.* In response to the four charges of endeavoring to influence or interfere with a witness in violation of G. L. c. 268, § 13B, the defendant asserted an "accord and satisfaction" defense pursuant to G. L. c. 276, § 55.[5] Pursuant to the statute, "[a] judge may discharge the defendant from an indictment or complaint on 'a charge of assault and battery or other misdemeanor for which he is liable in a civil action . . .' when a victim appears in court acknowledging that she 'has received [monetary payment in] satisfaction for the injury.' " *Commonwealth* v. *Gonzalez,* 388 Mass. 865, 867 n.4 (1983), quoting G. L. c. 276, § 55. See J.R. Nolan & B.R. Henry, Criminal Law § 618, at 509 (2d ed. 1988). Once acknowledged and accepted, the payment is referred to as an accord and satisfaction. See *Mahoney's Case,* 371 Mass. 891, 891 (1976). At the charge conference, defense counsel requested an instruction including the text of the accord and satisfaction statute and that "the Commonwealth must also prove beyond a reasonable doubt that the defendant's offer of a promise, gift, or something of value to the witness was not a lawful endeavor

---

[4]"I have a hundred and fifty dollars, plus food stamps, get me out of here and they are all yours.

"Please do that for me. Tell them I did not hit you [in the eye], please, for me. I will give you my money . . . .

"I will give you anything I have . . . I know it is a lie, but that is the only way. Baby, tell them that for me. I need you to lie for me. Please tell a lie for I can get out. . . . I know it is wrong for me to ask you to lie for me.

"Don't tell them that I hit you . . . . When you get on the stand, tell them you are lying, because you [were] mad at me.

"[My mother] is going to give you $300. . . . The only one[s who] will know [are] you and me . . . ."

[5]The defendant argued in his opening statement that, "offer[ing] somebody money to settle a criminal case is right. It's not against the law. In fact there is [an accord and satisfaction] statute in this Commonwealth that authorizes that, that says you can offer money, that you can offer a promise to settle a criminal case."

It is not clear whether the accord and satisfaction theory was offered as an affirmative defense (that the Commonwealth would have to disprove) or as an alternative explanation for conduct that might negate one of the elements of G. L. c. 268, § 13B, i.e., that the defendant *wilfully* endeavored to influence the witness.

authorized by [the accord and satisfaction statute]." After considering "those [approximately] fifty letters that are in testimony," including their repeated requests that the victim "lie" about the underlying incident, the judge declined to give the requested instruction. The defendant preserved his appellate rights and moved for a mistrial. "Because the defendant objected to the judge's refusal to give [the accord and satisfaction] instruction, we review the omission to determine if there was prejudicial error." *Commonwealth* v. *Robinson*, 48 Mass. App. Ct. 329, 338 (1999), citing *Commonwealth* v. *Grenier*, 415 Mass. 680, 686-687 & n.8 (1993).

According to the defendant, without the benefit of the desired instruction, the jury were ill equipped to discern whether the letters were an unlawful attempt to influence the victim or a lawful attempt to reach an accord and satisfaction vis-à-vis the outstanding assault and battery charge. Because most jurors are not familiar with the accord and satisfaction doctrine, it should be charged in cases where it is adequately supported by the evidence. Here, however, no view of the evidence could lead a reasonable jury to find that the defendant intended to enter into an accord and satisfaction. See *Commonwealth* v. *Medina*, 430 Mass. 800, 809 n.11 (2000). We thus conclude that the judge's omission was not error.

As the evidence makes clear, the letters invite the victim to participate in a scheme of dishonesty, not one of accord and satisfaction. To effectuate an accord and satisfaction, the victim need only proffer a written acknowledgment "that I have received satisfaction for my injury and request that the charges be dropped." R. M. Kantrowitz & R. Witkin, Criminal Defense Motions § 15.11, at 544 (2d ed. 1998). If this is all the defendant sought to accomplish, there would be no need for the repeated requests for the victim to lie on his behalf. Given this context, statements such as, "please tell [them] that you got jumped and I didn't hit you," and "I know it is a lie, but that is the only way," linked to offers for financial compensation, can only be understood as prohibited attempts to influence the witness.

The defendant's desire that the victim remain secretive about the proposed scheme also contradicts the plain operation of the

accord and satisfaction doctrine that requires presentation to the court.[6] See G. L. c. 276, § 55. The defendant's theory is even less plausible given his history of encouraging the victim to lie to law enforcement agencies in order to protect his penal interests.[7] Here, a party encouraged a witness to lie, and to keep the proffered payment a secret. This is a far cry from the accord and satisfaction doctrine that enables two parties to strike a publicly approved, judicially sanctioned arrangement. G. L. c. 276, § 55. For these reasons, no view of the record would support the elements of an accord and satisfaction defense, and the judge's refusal to give the requested charge was therefore proper. See *Commonwealth* v. *Champagne*, 399 Mass. 80, 91 (1987).

3. *Opinion testimony.* At trial, the prosecutor asked the victim, "When the [d]efendant offered you $150 plus the food stamps, what did you think he was offering you that for?" When she answered, "Just to bribe me to get him out of jail," defense counsel objected and moved to strike the response. At sidebar, the prosecutor argued that the contested statement was relevant, because "[i]t goes to the accord and satisfaction [theory]. . . . What I intend to show is he repeatedly made offers [that] she repeatedly rejected, so that even doing accord and satisfaction was unreasonable because she rejected the offers." Defense counsel countered that the victim's "subjective . . . evaluation of what the offer was for" was not relevant; rather, it was a question for the triers of fact to decide. Given the viability of an accord and satisfaction defense at that juncture, the judge overruled the objection.[8] We review for prejudicial error. See *Commonwealth* v. *Martinez*, 431 Mass. 168, 173 (2000).

"A judge's decision that evidence is relevant and that the

[6]Given that, according to the text of his letters, the defendant was in contact with his attorney at all relevant times, we are unpersuaded by the suggestion that he simply misunderstood the procedural mechanics of an accord and satisfaction.

[7]For instance, after one instance of abuse, the victim telephoned the police and the defendant said, "Look how those guys did you, why did you get in that van?" Familiar with the defendant's "trying to play his role," the victim realized that the defendant "was making a lie for me" to relate to the police.

[8]This question was asked only with regard to one of the letters. The victim did not offer any opinion as to the defendant's intentions behind the other letters.

probative value of relevant evidence is not outweighed by its prejudicial effect will be upheld on appeal absent palpable error." *Commonwealth* v. *DiMonte*, 427 Mass. 243, 243-244 (1998). From his opening statement, the defendant manifested an intent to portray the letters as attempts to negotiate a lawful accord and satisfaction. To the extent that any accord and satisfaction requires a "meeting of the minds," the victim's interpretation of the defendant's intention is relevant. Although the sheer weight of subsequently admitted evidence would ultimately undermine the accord and satisfaction defense, the theory was very much a live issue at the time the victim testified.[9] Given this context, the challenged testimony was probative.

In addition to the statements' probative value, our conclusion is bolstered by its limited prejudicial effect, if any. First, the victim's opinion was hardly the only evidence proffered against the defendant. See *Commonwealth* v. *Prater*, 431 Mass. 86, 94 (2000). The jury saw the most compelling evidence, i.e., the letters, and were free to draw their own inferences regarding the drafter's intent. Second, to the extent the parties maintained an affectionate relationship for several years, the victim's understanding of the defendant's expressions and use of language is similar to evidence properly admitted in other cases.[10] See, e.g., *Commonwealth* v. *Anderson*, 425 Mass. 685, 687 & n.5 (1997) (witness testified that "cap him" meant to fire pistol or shoot); *Commonwealth* v. *Strahan*, 39 Mass. App. Ct. 928, 929 (1995) (ship's mate "took the defendant's remarks as a threat to sink the boat"). Third, the prosecutor's closing argument diluted whatever impact the challenged testimony may

[9]Although the defendant did not request an instruction on this point, the judge arguably should have instructed the jury that the victim's interpretation of the letter is not dispositive of the matter. See P.J. Liacos, Massachusetts Evidence § 7.3.1, at 372 (7th ed. 1999 & Supp. 2001) (discussing admissibility of opinions bearing on "ultimate issues"). The judge did, however, instruct the jury to "give the testimony of each witness whatever degree of belief and importance that you judge it is fairly entitled to receive." Because the statement itself was of minimal import, any related instruction would be of little assistance, as well. Thus, the absence of any curative instruction was not error.

[10]On both direct and cross-examination, the witness recounted other familiar expressions used by the defendant and her interpretation of what they meant. The defendant does not contest this testimony. See note 7, *supra*.

have had. Not only was there no reference to the victim's opinion, but the Commonwealth conceded that "[the letters] are not susceptible to any interpretation by a witness on the stand. You will read them and you will understand what they mean. . . . And it doesn't matter whether [the victim] said she took him seriously about giving her the money." Where, as here, the probative value of contested evidence outweighs any prejudicial effect, its admission is not error. See *Commonwealth* v. *Smiley*, 431 Mass. 477, 484 (2000), and cases cited.

4. *Violation of Protective Order.*

a. *Due process.* The defendant challenges the convictions for violating the c. 209A protective order on the ground that he was deprived of his constitutional right to a meaningful opportunity to be heard in opposition. Because of his incarceration, the defendant claims he was afforded neither adequate notice nor a meaningful opportunity to be heard on the extension of the underlying temporary no-contact order. Given our holding in *Commonwealth* v. *Delaney*, 425 Mass. 587, 590-593 (1997), cert. denied, 522 U.S. 1058 (1998), we disagree.

On March 27, 1996, the defendant was arrested, taken into custody, and held at the Nashua Street jail. Two days later, the victim applied for a temporary protective order against the defendant. Consistent with G. L. c. 209A, § 4, the judge granted the victim's application on an ex parte basis. On April 3, 1996, the jail's chief investigating officer served the temporary order on the defendant at the jail. See G. L. c. 209A, § 7.[11] As apparent from its face, the order was scheduled to expire on April 12, 1996, pending a hearing (fixed on the expiration date) on the order's extension. As a result of his incarceration, the defendant did not appear at the hearing and was unaware of the judge's decision to extend the order. Shortly thereafter, on or about April 17, the defendant commenced his letter-writing campaign, which continued through July 31, in violation of the terms of the order. On November 21, 1996, the defendant was finally served with the extended order.

"It is clear that '[d]ue process requires that no [extended] order be issued against a person without prior notice and the

---

[11]The victim also testified that, within one week of its issuance, she spoke with the defendant about the initial protective order.

opportunity to be heard.' " *Commonwealth* v. *Delaney, supra* at 591 n.7, quoting Commentary to § 5:05 of the Guidelines for Judicial Practice: Abuse Prevention Proceedings (Oct. 1996). There, we concluded that "service of the extended order on the defendant was not a prerequisite to his prosecution for violating the terms of the order," where the initial "ex parte order informed the defendant that an extended order may be entered against him if he did not appear at the hearing." *Commonwealth* v. *Delaney, supra* at 591, 592. See *Commonwealth* v. *Bachir*, 45 Mass. App. Ct. 204, 210-211 (1998). Similarly, in the case at bar, the defendant admits he received the initial order that stated: "The Defendant may appear [at the scheduled hearing], with or without attorney, to oppose any *extension* or modification of this Order. If the Defendant does not appear, the Order may be *extended* or modified as determined by the Judge." (Emphases added.) It is thus clear from the face of the order that extension beyond the fourteen day period was a very real possibility of which the defendant was forewarned. See G. L. c. 209A, § 4 ("If the defendant does not appear at such subsequent hearing, the temporary orders *shall continue in effect without further order of the court"* [emphasis added]). "This information was certainly sufficient to put the defendant on notice, for '[n]otice of facts which would incite a person of reasonable prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would develop.' " *Commonwealth* v. *Delaney, supra* at 592, quoting *Commonwealth* v. *Olivo*, 369 Mass. 62, 69 (1975). See *Commonwealth* v. *Munafo*, 45 Mass. App. Ct. 597, 601-602 (1998). In these circumstances, personal service of the extended order was not required. See *Commonwealth* v. *Olivo, supra* at 69-71 (although defendants could not read English, service of official order sufficient to put reasonable person on notice that inquiry is required and party's "disability" did not render them incapable of understanding need for such inquiry). See also *Commonwealth* v. *Bachir, supra* at 211 (father abducted child after issuance of extended order).

The defendant's attempt to distinguish *Commonwealth* v. *Delaney, supra* (service left at defendant's last and usual place of abode) because of his incarceration is unpersuasive. Nothing

in the record hints that the defendant desired, or made any effort, to attend or to reschedule the hearing. We are particularly mindful of the fact that he was familiar with the process and represented by counsel at all pertinent times. See *Mahoney* v. *Commonwealth*, 415 Mass. 278, 287 (1993); *Ruml* v. *Ruml*, 50 Mass. App. Ct. 500, 507 (2000); *Commonwealth* v. *Munafo*, 45 Mass. App. Ct. 597, 601 (1998). Moreover, as exhibited by his letters, the defendant did not hesitate to draft correspondence regarding his legal predicament. Had he notified the court of his interest in attending the extension hearing, the means of doing so, i.e., requesting a writ of habeas corpus from the appropriate law enforcement authorities, was readily available.[12] See *Commonwealth* v. *Harrison*, 429 Mass. 866, 867 & n.2 (1999). Following the hearing date, the defendant did nothing to seek rehearing or reconsideration in light of his alleged inability to attend the originally scheduled hearing. Collectively, these factors suggest that the defendant received notice and had an opportunity to be heard. His choice to ignore the hearing will not exempt him from the extended order issued at that hearing. See *Commonwealth* v. *Chartier*, 43 Mass. App. Ct. 758, 765 (1997).[13]

b. *Sufficiency of the evidence.* "To establish a violation of G. L. c. 209A, § 7, the Commonwealth must prove that (1) a valid c. 209A order was entered by a judge and was in effect on the date of the alleged violation; (2) the defendant violated the order; and (3) the defendant had knowledge of the order." *Com-*

---

[12]Courts should make efforts "to secure [the defendant's] presence in court if requested to do so." Commentary to § 4.07 of the Guidelines for Judicial Practice: Abuse Prevention Proceedings (Oct. 1996). "[I]f the court does not issue a writ of habeas corpus for the defendant to appear at the ten-day hearing, the defendant has no meaningful opportunity to exercise his or her right to be present." A.J. Cabral, Obtaining, Enforcing and Defending c. 209A Restraining Orders in Massachusetts § 2.8.2, at 2-13 (Mass. Continuing Legal Educ. 1997). Contrary to his argument, however, the onus of seeking a writ of habeas corpus falls on the defendant. In these proceedings, the court is under no obligation to issue a writ of habeas corpus absent a request.

[13]The defendant's reliance on *Commonwealth* v. *Harrison*, 429 Mass. 866, 867 (1999) (vacating probation revocation; hearing held in defendant's absence because of incarceration in Federal prison), is similarly misplaced. There, the defendant's desire to participate was evidenced by counsel's objections and the Superior Court's repeated efforts to secure his presence by a writ of habeas corpus. *Id.* at 867-868 & nn. 2, 5. No such efforts were expended by this defendant.

*monwealth* v. *Silva*, 431 Mass. 401, 403 (2000). The defendant claims that the judge erred in denying his motion for required findings of not guilty because the third element was not supported by sufficient evidence. Service of the initial order placed the defendant on constructive, if not actual, notice of the order's existence and its terms. See *Commonwealth* v. *Crimmins*, 46 Mass. App. Ct. 489, 491 (1999), citing *Commonwealth* v. *Collier*, 427 Mass. 385, 388 (1998). Contrast *Commonwealth* v. *Molloy*, 44 Mass. App. Ct. 306, 308-309 (1998) (defendant not served with annual extension order pursuant to G. L. c. 209A, §§ 4, 7). We are satisfied that a rational trier of fact could find the "knowledge" element proven beyond a reasonable doubt. There is no need to disturb the judge's ruling on this matter. See *Commonwealth* v. *Silva, supra* at 404-405.

*Judgments affirmed.*