After a jury trial, the defendant was convicted of armed assault with intent to rob, assault and battery by means of a dangerous weapon, assault and battery, use of tear gas in the commission of a crime, resisting arrest, and malicious destruction of property. On appeal, he claims that there was insufficient evidence to support three of his convictions and that a substantial risk of a miscarriage of justice resulted from the admission of lay opinion testimony and from the jury instructions. We affirm.
1. Sufficient evidence. The defendant claims there was insufficient evidence to support the "dangerous weapon" elements of armed assault with intent to rob and of assault and battery by means of a dangerous weapon, and to support his conviction of the use of tear gas in the commission of a crime. We disagree.
"When analyzing whether the record evidence is sufficient to support a conviction, an appellate court is not required to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' " Commonwealth v. Johnson, 91 Mass. App. Ct. 296, 308 (2017), quoting from Commonwealth v. Velasquez, 48 Mass. App. Ct. 147, 152 (1999). Rather, the relevant "question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting from Jackson v. Virginia, 443 U.S. 307, 319 (1970).
Because the statutes at issue do not define "dangerous weapon," we employ the common-law definition for our analysis. That is, "dangerous weapons include those objects that are dangerous per se-'designed and constructed to produce death or great bodily harm' and 'for the purpose of bodily assault or defense,' Commonwealth v. Appleby, 380 Mass. 296, 303 (1980) -as well as those objects that are dangerous as used-items that are not dangerous per se but 'become dangerous weapons because they "are used in a dangerous fashion." ' " Commonwealth v. Wynton W., 459 Mass. 745, 749 (2011), quoting from Commonwealth v. Tevlin, 433 Mass. 305, 310 (2001).
Here, the weapon at issue was pepper spray, and the question is whether there was sufficient evidence that it is dangerous per se. In Commonwealth v. Lord, 55 Mass. App. Ct. 265 (2002), we held that "[w]eapons regarded as dangerous per se, such as firearms, daggers, stilettos and brass knuckles, are instrumentalities 'designed and constructed to produce death or great bodily harm,' and are classified in this manner 'because they are designed for the purpose of bodily assault or defense.' " Id. at 269, quoting from Appleby, supra. With that in mind, we focused our analysis on the design of the device and its intended purpose and "whether it [was] capable of causing death or the requisite degree of bodily harm." Lord, supra. Although the quantum of the requisite harm has enjoyed a variety of labels, at bottom, we have held that the harm must be "calculated to interfere with the health or comfort of the [victim]. Such hurt or injury need not be permanent, but must ... be more than merely transient and trifling." Id. at 269 n.7, quoting from Commonwealth v. Farrell, 322 Mass. 606, 621 (1948).
With that analysis in Lord, we held that "old style mace" was dangerous per se. Lord, supra at 269, 270. While we expressly left open the question whether pepper spray was dangerous per se, ibr.US_Case_Law.Schema.Case_Body:v1">id. at 270 n.10, we now answer that question in the same manner, for many of the same reasons. Like conventional mace, a pepper spray canister is "dangerous per se because it was designed for the sole purpose of bodily assault or defense and was constructed to inflict serious bodily harm through incapacitation, and because, in these circumstances, the defendant used it in a manner consistent with its design." Id. at 269-270.
Contrary to the defendant's claim, the fact that the verdict in Lord (unlike in this case) was supported with expert testimony on the properties and physiological effects mace has on a person is of no legal significance because the evidence here was still sufficient to establish pepper spray as dangerous per se. In fact, because the evidence supported a rational conclusion that the pepper spray was designed and had an intended purpose to inflict the requisite degree of bodily harm, it was permissible for the jury to conclude it was dangerous per se. See ibid.
Similarly, the victim's testimony, which the defendant views as minimizing her injuries, does not affect our conclusion that the evidence established that pepper spray is dangerous per se. Even if the victim "did not actually suffer serious bodily injury, something we need not decide, the [pepper spray] was nonetheless inherently dangerous because of its capacity to inflict serious harm." Id. at 271 (footnote omitted), citing Appleby, 380 Mass. at 307 n.6. Indeed, "[t]he law need not wait until the instrument actually does cause serious bodily harm in order to classify the weapon as dangerous." Appleby, supra at 307.[2]
2. Jury instructions. For the first time on appeal, the defendant claims the judge erred in his jury instruction on dangerous per se, and that he failed to instruct the jury on dangerous as used. We disagree.
Apart from his sufficiency of the evidence claim, the defendant also claims that the judge improperly removed from the jury's consideration the element of dangerousness when he instructed the jury that pepper spray was a dangerous weapon. However, in Commonwealth v. Tarrant, 367 Mass. 411 (1975), the Supreme Judicial Court held that where it appears that the "instrumentality is ... designed to produce death or serious bodily injury," the instrumentality qualifies as dangerous as a matter of law. Id. at 416. In contrast, "where the instrumentality is not per se harm-inducing it is a question of fact for the jury whether the circumstances surrounding the presence of the instrumentality suggest its latent character as dangerous." Ibid. See Appleby, 380 Mass. at 303-304. Because dangerousness per se was a question of law, the judge did not err in instructing as he did, and thus there is no risk that justice miscarried.
The defendant also claims the judge failed to instruct the jury on the required factors for them to assess whether pepper spray was dangerous as used. We disagree. First, the defendant did not request such an instruction. Second, the judge was not required to sua sponte instruct in this manner given that the jury had already been told pepper spray was dangerous per se. Third, the gravamen of the defense was that the defendant was not the assailant and the can of pepper spray found in the defendant's vicinity was not employed in the attack. In fact, the defense argued that the victim's injuries were inconsistent with someone who had been sprayed with pepper spray. Had the judge instructed on dangerous as used, it would have conflicted with the defense. See Commonwealth v. Proulx, 61 Mass. App. Ct. 454, 464 (2004). There was neither error nor an abuse of discretion, and thus no risk that justice miscarried.
3. Opinion testimony. Also for the first time on appeal, the defendant claims that witnesses improperly provided their opinions on the meaning of the phrase "run what you got," and as a result gave an opinion as to the ultimate issue of his intent to rob. We disagree.
Here, two police officers testified that the phrase in question was meant as a demand for the person to whom it was directed to turn over his or her belongings. However, the officers' testimony was at best cumulative of what the victim herself described it meant to her, i.e., that the assailant wanted her to "give him what [she had]." It was certainly permissible for the victim to explain the manner in which the assailant attempted to rob her and its effect on her. In conjunction with the victim's testimony, both officers opined as to the meaning of a phrase that may not have been obvious to the jury. As in other instances, the witnesses in this case merely explained the significance and meaning of the evidence. See Commonwealth v. Anderson, 425 Mass. 685, 687 & n.5 (1997) ; Commonwealth v. Rosa, 62 Mass. App. Ct. 622, 627-628 (2004). See also Commonwealth v. Henderson, 434 Mass. 155, 159-161 (2001). Neither officer opined on the defendant's guilt.
Judgments affirmed.

The defendant, quoting from G. L. c. 269, § 10C, also claims there was insufficient evidence to support his conviction of the use of "tear gas cartridges or any device or instrument which contains a liquid ... designed to incapacitate for the purpose of committing a crime." We disagree. As we held above, pepper spray is designed to incapacitate, and the canister that the defendant used contained "CS TEAR GAS" and listed the "ACTIVE INGREDIENTS" as "CS Military Tear Gas." The claim is without merit.