## ESSEX NAT. BANK v. HURLEY.

(Circuit Court of Appeals, First Circuit. December 18, 1926.)

No. 2060.

1. Bankruptcy ⬾303(3)—Use of bankrupt's quick assets to pay notes on which sole stockholder was indorser held to evidence intent to create preference.

That practically all quick assets of corporate bankrupt were used to pay notes on which sole stockholder was individually liable as indorser *held* to warrant finding that preference was intended.

2. Bankruptcy ⬾166(4)—Creditor's reasonable belief in debtor's insolvency creates preference, but mere cause to suspect insolvency does not.

Creditor's reasonable belief in debtor's insolvency when debt is paid creates preference, but mere cause to suspect insolvency does not.

3. Bankruptcy ⬾303(3)—Finding that bank had reasonable cause to believe bankrupt was insolvent when notes were paid held warranted.

Evidence *held* to warrant finding that bank had reasonable cause to believe that bankrupt was insolvent, when bankrupt's notes were paid to bank within four months prior to involuntary adjudication.

4. Notice ⬾6—Notice of facts inciting reasonably prudent person to inquiry is notice of facts reasonably diligent inquiry would develop.

Notice of facts which would incite a person of reasonable prudence to inquiry under similar circumstances is notice of all facts which reasonably diligent inquiry would develop.

Appeal from the District Court of the United States for the District of Massachusetts; George W. Anderson, Judge.

Suit by H. Francis Hurley, trustee in bankruptcy of Atwood & Gardner, Inc., against the Essex National Bank. Decree for plaintiff, and defendant appeals. Affirmed.

James P. Cleary, of Haverhill, Mass. (John J. Ryan and Ryan & Cleary, all of Haverhill, Mass., on the brief), for appellant.

John W. Morgan, of Lynn, Mass. (Murray Brown, of Lynn, Mass., on the brief), for appellee.

Before BINGHAM and JOHNSON, Circuit Judges, and MORRIS, District Judge.

MORRIS, District Judge. The plaintiff, appellee, trustee in bankruptcy of Atwood & Gardner, Inc., a Massachusetts corporation, brings this bill under the provisions of section 60b of the Bankruptcy Act, of July 1, 1898, and amendments thereto (Comp. St. § 9644), to recover two alleged preferential payments made by Atwood & Gardner, Inc., to the Essex National Bank.

The evidence establishes the following facts:

The bankrupt, Atwood & Gardner, Inc., was a small shoe-manufacturing concern doing business in Haverhill, Mass. It was adjudicated a bankrupt on November 24, on an involuntary petition filed November 10, 1924. It had a capital stock of $30,000. Prior to November, 1923, its stock was owned by Frank S. Atwood, president, and George B. Gardner, its treasurer. About that time Gardner bought out Atwood's interest and thereafter appears to have owned and operated the concern as his own. The bankrupt had a line of credit for $10,000 with the Essex National Bank in Haverhill, Mass., and $20,000 with the Essex Trust Company, in Lynn. In its general course of dealing with the bank, the notes of the corporation were indorsed by Atwood and Gardner, individually, and after Atwood's retirement by Gardner alone. Its fiscal year ended on May 31. The bank was accustomed to require and receive annually from its borrowing customers statements of their condition. The last statement received from the bankrupt corporation was in 1923. It showed considerable shrinkage in net worth during the preceding year. During most of the time prior to the summer of 1924 the corporation had been a borrower from

the defendant bank on notes, of sums ranging from $5,000 to $10,000. The notes were given, some on one month's time and some on three months' time. On April 22, 1924, the bank discounted a note of the corporation for $10,000, due July 22, 1924. When the note became due, $5,000 was paid and a note for $5,000 was given for the balance, which became due and was paid September 22, 1924.

It is these sums that the trustee now seeks to recover as a preference.

In the summer of 1924, the shoe business in Haverhill was particularly bad, due in part to labor troubles. About July 1st, Gardner stated in effect to the president of the bank that he was making no money; that he was considering making a change in the kind of shoes manufactured, which would necessitate considerable expense for the new machinery, and also that he was considering leaving Haverhill.

During the summer the corporation was doing practically no business, and this fact was known to the defendant as its pay rolls were drawn weekly from the bank. The bank had neglected to insist, as was its custom, on the filing of a financial report as of May 31, 1924. Earlier reports, as well as the course of business with the bank, indicated that credit was grounded, at least in part, upon the indorsement by Gardner. After the first $5,000 note was paid the corporation had a balance in the bank of a little over $300, and after the payment of the second $5,000, about September 22, 1924, the balance was only $10, and during this period the deposits were very small.

The certificate of condition required to be filed with the commissioner of corporations in Massachusetts, as of May 31, 1924, showed a deficit of $9,698.72, as contrasted with a surplus of $2,831.64 in its statement for the previous year.

[1] It does not appear, however, that the president of the bank or any of the bank officials saw the certificate of condition. The physical assets of the corporation were sold by a trustee at public auction for $1,576.12. A sale of the accounts receivable netted the estate $200, so that the total assets of the corporation, disposed of at a forced sale, amounted to $1,776.12. Its liabilities were far in excess of that amount. That Atwood & Gardner, Inc., was insolvent, is conclusively established by the evidence. The fact that practically all of the quick assets of the corporation were used to pay notes upon which Gardner was individually liable is evidence from which it may be found that a preference was intended to be given.

Upon the record it does not appear that there was any direct evidence that the defendant had knowledge of the bankrupt's insolvency, or that the payment was intended as a preference at the time it was made; but it is claimed that the evidence establishes the fact that it had such information through its officers as would put reasonable persons upon notice that the debtor was insolvent and that the payments were intended as a preference within the meaning of the act. The District Court has so found.

[2] We recognize the distinction between reasonable belief of a debtor's insolvency and cause to suspect such insolvency. The former creates a preference. The latter is insufficient on which to ground a preference. Grant v. National Bank, 97 U. S. 80, 24 L. Ed. 971.

[3, 4] The fact that the corporation was doing little business in 1924; that the president of the bank was told that it was making no money; that previous credit was given, in part at least, upon the strength of Gardner's individual indorsement; that its last financial statement showed a material reduction in net worth; that it failed to file its financial statement for the fiscal year ending May 31, 1924; that it considered moving from Haverhill and a change in the kind of shoes manufactured; and that payment of the notes practically exhausted its bank balance—were all conditions, when considered together, that should have led a careful bank president to investigate its financial condition, and, if such investigation had been made, it would have disclosed insolvency. "Notice of facts which would incite a person of reasonable prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would develop." Coder v. McPherson (C. C. A.) 152 F. 951; In re Gaylord (D. C.) 225 F. 234, 239.

We cannot say that the District Court erred in its conclusion that the bank had reasonable cause to believe, at the time the several payments were made, that Atwood & Gardner, Inc., was insolvent.

The decree of the District Court is affirmed, with costs to the appellee.