## COMMONWEALTH vs. FRANK WELCH.

No. 02-P-291.

Suffolk. March 5, 2003. - June 27, 2003.

Present: PORADA, SMITH, & KAFKER, JJ.

*Protective Order. Abuse Prevention. Due Process of Law,* Abuse prevention, Notice. *Evidence,* Relevancy and materiality.

Evidence at the trial of a complaint for violation of a G. L. c. 209A protective order was insufficient to warrant conclusions that the order was valid [409-410], or that the defendant had knowledge of the terms of the order [410-411].

COMPLAINT received and sworn to in the Chelsea Division of the District Court Department on August 25, 1998.

The case was heard by *Paul V. Buckley,* J.

*Gregory C. Kachagian* for the defendant.

*Donna Jalbert Patalano,* Assistant District Attorney, for the Commonwealth.

PORADA, J. Convicted in a bench trial in the District Court of violating a G. L. c. 209A order,[1] the defendant on appeal claims that his motions for a required finding of not guilty should have been allowed because the Commonwealth failed to prove that the protective order was valid and that the defendant had knowledge of the terms of the order. We agree and reverse.

In order to "establish a violation of G. L. c. 209A, § 7, the Commonwealth must prove that (1) a valid G. L. c. 209A order was entered by a judge and was in effect on the date of the alleged violation; (2) the defendant violated the order; and (3) the defendant had knowledge of the order." *Commonwealth* v.

---

[1]The defendant was also convicted of assault and battery and assault and battery by means of a dangerous weapon. The defendant has not appealed from those convictions.

*Silva*, 431 Mass. 401, 403 (2000). *Commonwealth* v. *Rauseo*, 50 Mass. App. Ct. 699, 704-705 (2001). The first and third elements are in dispute.

1. *Validity of the order.* The defendant challenges the validity of the order on the ground that he had no notice of the proceeding resulting in the order. Under G. L. c. 209A, § 7, a copy of the order is required to be served on the defendant by the appropriate law enforcement agency. Personal service of the order, however, is not required provided the following due process considerations have been met: namely, the defendant has received notice of the proceedings, has been given an opportunity to be heard at a meaningful time and place, and has received fair notice of what the order prohibits so that the defendant may act accordingly. *Commonwealth* v. *Delaney*, 425 Mass. 587, 591-593 (1997), cert. denied, 522 U.S. 1058 (1998). In *Delaney*, the Supreme Judicial Court upheld a conviction for a violation of a protective order that had been extended following the issuance of a temporary restraining order even though there was no evidence that the extended order had ever been served on the defendant. The Supreme Judicial Court based its decision on the fact that the ex parte temporary restraining order was served on the defendant by leaving it at his last and usual place of abode and provided notice that the order might be extended if the defendant failed to appear at a hearing at a time, date, and place specified in the order. Thus, the defendant was put on notice that, with reasonable inquiry, he could have learned whether the order had been extended and its content. *Id.* at 589-593. See *Commonwealth* v. *Henderson*, 434 Mass. 155, 161-164 (2001); *Commonwealth* v. *Chartier*, 43 Mass. App. Ct. 758, 765 (1997); *Commonwealth* v. *Bachir*, 45 Mass. App. Ct. 204, 210-211 (1998); *Commonwealth* v. *Munafo*, 45 Mass. App. Ct. 597, 601-602 (1998). In this case, not only was there no evidence that the extended order was ever served on the defendant, either in hand or at his last and usual place of abode, but also, unlike in *Delaney*, there was no proof that the ex parte order, which would have provided the defendant with the requisite notice, opportunity to be heard, and knowledge of the

proscribed conduct, was ever served on the defendant in any manner. Consequently, the extended order[2] is invalid.

2. *Knowledge of the terms of the order.* The defendant argues that his conviction must be reversed because the Commonwealth has failed to prove that he had knowledge of the terms of the order. Failure to serve an order is "relevant to a determination as to whether the defendant possessed the knowledge required to convict him of violating the order." *Commonwealth* v. *Delaney*, 425 Mass. at 593. However, it is not fatal if the Commonwealth can demonstrate that the defendant had actual knowledge of the terms of the order. *Id.* at 592-593. See *Commonwealth* v. *Crimmins*, 46 Mass. App. Ct. 489, 491 (1999). Further, "[n]otice of facts which would incite a person of reasonable prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would develop." *Commonwealth* v. *Olivo*, 369 Mass. 62, 69 (1975), quoting from *Essex Natl. Bank* v. *Hurley*, 16 F.2d 427, 428 (1st Cir. 1926).

To prove the defendant's knowledge, the Commonwealth relied upon testimony of the victim that "[o]nce or twice maybe" she had had telephone conversations with the defendant about the restraining order and that, to the best of her knowledge, she "[knew] whether or not the defendant knew that there was a [r]estraining [o]rder." The victim did not testify to what she or the defendant said during those conversations or when those conversations occurred. Absent further details, we do not think this evidence suffices to prove that the defendant had actual knowledge of the terms of the order or was put on sufficient notice to make reasonable inquiry concerning the issuance and terms of the order. Contrast *Commonwealth* v. *Mendonca*, 50 Mass. App. Ct. 684, 688 (2001) (even assuming a failure of service, the defendant's actual knowledge of the terms of the order was established by evidence that the victim told the

---

[2]The temporary restraining order issued on March 10, 1998, and was extended on March 24, 1998. The order required among other things that the defendant not abuse the victim, have no contact with the victim, leave and stay away from the victim's residence, and have no visitation with his son until a court hearing at which the defendant was present was held. The defendant did not appear on the scheduled date for the extension hearing. No proof of service of the extended order was entered in evidence.

defendant "a few times" that he was not supposed to call, the defendant's response that he "didn't believe" in restraining orders, and the victim's daughter's corroboration of the conversation).

The Commonwealth also points to evidence that the victim testified that the defendant and she worked different shifts at the same place of employment because of the restraining order. However, the victim further testified that she had never worked the same shift as the defendant even prior to the issuance of the order. We thus reject this evidence as establishing sufficient proof of the defendant's actual knowledge of the order and its terms.

Finally, the Commonwealth points to the evidence upon which the trial judge as the fact finder relied as establishing the defendant's knowledge of the terms of the order. The victim testified that about two months prior to the defendant's violation of the order she spied the defendant standing outside of their place of employment on a crowded street as she left a store with her son. Her son ran toward the defendant, his father. The victim yelled to her son that he could not go with the defendant because of the restraining order and told her son to come back. After the victim shouted this out to her son, the defendant sent him back to his mother. It is not clear from the testimony that the defendant, who, according to the victim, was standing about thirty feet from her on a busy street at 4:30 or 5:00 P.M., actually heard the victim or what the defendant's reason was for sending his son back. As such, we think this evidence was likewise inconclusive and does not establish beyond a reasonable doubt that the defendant had knowledge of the terms of the order.

*Judgment reversed.*