## COMMONWEALTH *vs.* JAMES MELTON.[1]

No. 08-P-2143.

Suffolk. January 13, 2010. - September 2, 2010.

Present: GRASSO, COHEN, & SIKORA, JJ.

*Practice, Criminal,* Required finding, Attendance of witnesses. *Abuse Prevention. Protective Order. Due Process of Law,* Abuse prevention, Notice. *Evidence,* Threat, Prior misconduct, Cumulative evidence. *Threatening. Constitutional Law,* Self-incrimination. *Witness,* Self-incrimination.

At the trial of a criminal complaint charging, inter alia, violation of an abuse prevention order, there was sufficient evidence to sustain the defendant's conviction, where the victim's statements to the defendant during a telephone call permitted the jury to find that the defendant had notice of the existence of a restraining order that, at the very least, prohibited him from calling the victim, and that the defendant violated by calling the victim very next day. [555-556] GRASSO, J., dissenting.

At the trial of a criminal complaint charging, inter alia, threatening to commit a crime, evidence that the defendant stated to the victim during a telephone call that he would "play dirty," given the abusive nature of their relationship and the prior use of the same phrase therein, was sufficient to sustain the defendant's convictions. [557-558]

In the circumstances of a trial of a criminal complaint charging violation of an abuse prevention order and threatening to commit a crime, there was no error in the admission of evidence of the defendant's prior abuse of the victim. [558-559]

At a criminal trial, there was no error in either the judge's denial of the defendant's request to compel the testimony of a witness, or the judge's declining to give a missing witness instruction. [559]

COMPLAINTS received and sworn to in the Dorchester Division of the Boston Municipal Court Department on December 31, 2007.

---

[1]The docket indicates that the defendant's true name is James Melton, as do the original abuse prevention order and the transcripts of the trial court proceedings. The opening docket entry corrects the appearance of an alias, "James Redd," on the complaint. We shall use the corrected true name throughout the opinion.

The cases were tried before *Robert P. Ziemian,* J.

*Neil L. Fishman* for the defendant.

*Andrea Keeffe (Kathleen Celio,* Assistant District Attorney, with her) for the Commonwealth.

SIKORA, J. A District Court jury convicted the defendant of violation of an abuse prevention order (one count), G. L. c. 209A, § 7, and of threats to commit a crime (two counts), G. L. c. 275, § 2. On appeal he argues that the evidence was insufficient to establish either offense; that the trial judge improperly admitted prejudicial evidence of prior bad acts; and that the judge wrongly excluded the testimony of a police detective and incorrectly denied a missing witness instruction concerning the detective's absence. For the following reasons, we affirm the convictions.

*Background.* The evidence permitted the jury to find the following facts. The victim, Maria Monteiro, began dating the defendant, James Melton, when she met him in Malden in 2006. Two months later, the defendant moved in with Monteiro and her seven year old daughter. Their relationship soon deteriorated, and a pattern of abuse ensued.

During their time together, Monteiro suffered frequent beatings, threats of violence and sexual abuse, and continuous emotional intimidation. Monteiro testified that the defendant had used various weapons against her, such as a knife, stun gun, and belt, and detailed certain incidents of abuse.[2] Monteiro did not promptly leave the defendant because she was afraid that he would harm her and her children.

Finally, on July 21, 2007, Monteiro moved from Malden to the Dorchester section of Boston. The defendant agreed to the separation in exchange for Monteiro's promise to pay his rent and car insurance premiums. Despite the distance, they remained in contact. The defendant occasionally visited Monteiro's Dorchester apartment for money, and once spent the night there.

However, after further friction, Monteiro on December 21,

---

[2]Her testimony included graphic allegations. Once, the defendant, after picking Monteiro up and threatening to throw her off their back porch, brought her into the apartment where he attempted to gouge her eyes and throw her into a fish tank. Another time, the defendant tied Monteiro to a chair and threatened to burn the house down by waving a lighter in front of an oven. On another occasion the defendant held a heated, red-hot knife to her throat.

2007, obtained a restraining order against the defendant from the Boston Municipal Court Department. The court mailed the order to the defendant's address on December 26. The order commanded the defendant "not to contact the plaintiff . . . either in person, by telephone, in writing or otherwise, either directly or through someone else . . . ."

On the evening of December 24, 2007, the defendant called Monteiro at her home in Dorchester. Without allowing her to speak, he asked "what was [she] doing" and "why did [she] go to the police." He told her that, if she went to the police, she was "playing dirty" and said, "You want to play dirty, I'll show you how to play dirty." The victim asked the defendant, "What are you doing calling me; there's a restraining order." The defendant answered, "Oh, you got a restraining order . . . after all we've been through why would you do that. That's how you want to do this." Monteiro ended the conversation and called the police because she was afraid that the defendant was outside her home.[3] At trial, Monteiro explained that the defendant had used the expression to "play dirty" prior to beating her.

On December 25, 2007, the defendant called Monteiro again and asked, "Why you doing this . . . do you know what you're doing . . . momma, why you doing this after all we been through . . . you want to play dirty, I'll show you; I'll show you how to play dirty." Upon hearing these words, Monteiro became fearful that the defendant "was going to come after [her], [to] finish the job." Monteiro reminded the defendant of the restraining order; he responded by asking her why she was doing this after all they had been through and whether she knew what would happen if he went back to jail. Monteiro then called the police. An officer came to her apartment and observed her distress. She showed him the restraining order.[4]

At trial, the District Court judge admitted evidence of the defendant's prior abuse of Monteiro with a limiting instruction.[5] The judge denied the defendant's motion to compel testimony

---

[3] The police responded to Monteiro's call and observed that she appeared afraid and upset.

[4] This officer also testified at trial.

[5] The defendant filed a motion in limine regarding these prior bad acts, which the judge denied, and objected at trial to the admission of the same evidence.

by a police detective who had been romantically involved with Monteiro from March to December of 2007 because the detective reported his intention to invoke his right against self-incrimination if forced to appear. The jury convicted the defendant of violating the restraining order by reason of his telephone call of December 25, 2007, and of threats to commit a crime on both December 24 and 25.[6]

*Analysis.* 1. *Sufficiency of notice of restraining order.* The defendant argues that there was insufficient evidence to convict him of violating a restraining order because (1) he had not received service of the order at the time of the alleged offense, and (2) he lacked actual or constructive notice of the order or its terms. He contends also that without service or notice of the order, the conviction violates his due process rights.

In review of the denial of a motion for a required finding of not guilty, we assess the evidence in the light most favorable to the Commonwealth to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). *Commonwealth* v. *Robicheau*, 421 Mass. 176, 181 (1995).

"To establish a violation of G. L. c. 209A, § 7, the Commonwealth must prove that (1) a valid G. L. c. 209A order was entered by a judge and was in effect on the date of the alleged violation; (2) the defendant violated the order; and (3) the defendant had knowledge of the order." *Commonwealth* v. *Silva*, 431 Mass. 401, 403 (2000). While failure to serve is " 'relevant to a determination as to whether the defendant possessed the knowledge required to convict him of violating the order' . . . it is not fatal if the Commonwealth can demonstrate that the defendant had actual knowledge of the terms of the order." *Commonwealth* v. *Welch*, 58 Mass. App. Ct. 408, 410 (2003), quoting from *Commonwealth* v. *Delaney*, 425 Mass. 587, 593 (1997), cert. denied, 522 U.S. 1058 (1998).

The defendant disputes the sufficiency of the evidence of his

[6]The judge sentenced the defendant to concurrent terms of imprisonment in the house of correction of two and one-half years (with credit for 112 days served) on the count of violating an abuse prevention order; and six months on each of the two counts of threatening to commit a crime.

knowledge of the order. It is well settled that "failure of service is not fatal to a conviction." *Commonwealth* v. *Griffen,* 444 Mass. 1004, 1005 (2005). No due process violation results if the Commonwealth proves that the defendant had actual knowledge of the terms of the order, despite any failure of service. See *Delaney, supra* at 592-593. All that remains is to determine whether he had actual knowledge of the restraining order and its terms.

The defendant claims that the telephone conversation between Monteiro and him on December 24, 2007, provided inadequate notice of the existence and terms of the restraining order issued on December 21, 2007. We disagree. During that call, Monteiro expressly asked him, "What are you doing *calling* me; there's a restraining order." (Emphasis supplied.) The defendant answered, "Oh, you got a restraining order . . . after all we've been through why would you do that. That's how you want to do this." In the light most favorable to the Commonwealth, a jury could have found that Monteiro's statements put the defendant on notice of the existence of a restraining order against him and reasonably advised him that the order prohibited calling. See *Commonwealth* v. *Mendonca,* 50 Mass. App. Ct. 684, 688 (2001) (affirming c. 209A, § 7, convictions where defendant had actual notice of order's terms because the victim had told him "a few times" that he was not supposed to call her). See also *Commonwealth* v. *Olivo,* 369 Mass. 62, 69 (1975), quoting from *Essex Natl. Bank* v. *Hurley,* 16 F.2d 427, 428 (1st Cir. 1926) ("[n]otice of facts which would incite a person of reasonable prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would develop"). In turn, the jury could have found also that the defendant's response indicated his awareness and comprehension that Monteiro had, in fact, taken a restraining order out against him.

Therefore, the evidence permitted the jury to find that the defendant had notice of the existence of a restraining order which, at the very least, prohibited him from calling Monteiro, and which he violated by calling her the next day. Because he had sufficient notice, no due process violation occurred.[7]

---

[7]We respect the cautionary reminder of the dissent that in the absence of

2. *Sufficiency of evidence of threats.* The defendant next argues that there was insufficient evidence of his intention to commit a crime against Monteiro.[8] General Laws c. 275, § 2, bars anyone from "threaten[ing] to commit a crime against the person or property of another." Although it is undefined under the statute, our courts have interpreted the term "threat" to be "an expression of intention to inflict a crime on another and an ability to do so in circumstances that would justify apprehen-

service we must not relax the standard of proof of the accused violator's actual knowledge of the relevant terms of the restraining order, especially when the source of that proof is the testimony of the applicant for the order. However, the circumstance of this case seems likely to be generic: in the wake of a triggering incident, an applicant will obtain an order; before accomplishment of service, the subject of the order will communicate with the applicant; she will inform him of the order and its prohibition of any communication; he may then continue to communicate in violation of it out of anger toward the applicant, the order, or the triggering event. The applicant and the accused violator, as here, will often be the sole communicants.

If we categorically hold that the testimony of the applicant cannot be sufficient to establish her notice to the accused violator of the no contact prohibition and therefore that it cannot establish his actual knowledge of the order, we would effectively withdraw from her the protection of the order during the volatile preservice period. The actual knowledge standard would serve little purpose in the generic situation. In particular the decision of *Commonwealth v. Mendonca,* 50 Mass. App. Ct. at 688, accepts the element of actual knowledge and necessarily makes it a matter of fact finding. The fact finder (here a jury) must be trusted, and should be able, to assess the credibility of the applicant and the weight of any circumstantial evidence or other indicia strengthening or weakening that credibility.

Here the applicant's credibility gained weight from her calls for police assistance on two successive nights and police testimony verifying her distress on each occasion. Several details of her account increased its strength. In the call of December 24, the defendant showed his awareness that she had already contacted the police, a sign of her resort to official intervention. On both nights he allegedly scolded and threatened her for seeking help from the police and the court. The jury were entitled to believe her.

[8]The defendant argues also that the conviction for the threat made on December 24 should be reversed because the complaint alleged that he had threatened the victim by stating, "I'll burn the house down and shoot everyone that runs out," not that he threatened to "play dirty" with her. We agree with the Commonwealth that this language constitutes a variance but that no error occurred because the essential elements of the crime were correctly stated and because he was not prejudiced in his defense. See *Commonwealth v. Grasso,* 375 Mass. 138, 139 (1978), citing G. L. c. 277, § 35 ("defendant is not to be acquitted on the ground of variance between the allegations and proof if the essential elements of the crime are correctly stated, unless he is thereby prejudiced in his defense").

sion on the part of the recipient of the threat." *Commonwealth* v. *Kerns*, 449 Mass. 641, 653 (2007), quoting from *Commonwealth* v. *Sholley*, 432 Mass. 721, 725 (2000), cert. denied, 532 U.S. 980 (2001). The threatening communication must be "made to (or be intended to reach) the person who is the intended target of the threatened crime, so as to cause fear and apprehension in that person." *Kerns, supra*, citing *Commonwealth* v. *Maiden*, 61 Mass. App. Ct. 433, 434 (2004).

In the light most favorable to the Commonwealth, sufficient evidence enabled the jury to determine that the defendant's statement that he would "play dirty" with Monteiro constituted a threat as defined under the statutory and decisional law. The defendant expressly communicated his intent to "play dirty" with Monteiro in telephone calls on December 24 and 25 in 2007. Historically, the expression "play dirty" had been a precursor to serious physical violence and abuse of Monteiro by the defendant. Given the abusive nature of their relationship and the prior usage of the phrase to "play dirty," Monteiro was justifiably apprehensive for her safety at the sound of those words.

3. *Admission of prior bad acts.* The defendant contends that the judge wrongly admitted evidence of his prior abuse of Monteiro because its prejudicial impact outweighed its probative value. "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Mass. G. Evid. § 404(b) (2010). However, where "evidence of prior bad acts is connected with the facts of the case and not too remote in time, it may be admitted to establish a course of conduct or state of mind . . . [so long as that] evidence [is] excluded when its prejudicial value substantially outweighs its probative effect" (citations omitted). *Commonwealth* v. *Johnson*, 45 Mass. App. Ct. 473, 478-479 (1998) (ruling that admission of the defendant's prior physical abuse of the victim was proper because it demonstrated his hostility toward her and her reasonable fear of him).

Here, the pattern of prior abuse was necessary to establish that Monteiro was reasonably apprehensive of the defendant, who knew her address. The evidence showed that the defendant was capable of inflicting serious harm on Monteiro, that his use of the expression to "play dirty" preceded instances of violent

abuse, and that Monteiro was reasonably fearful of the defendant upon hearing his threats to "play dirty" with her for securing a restraining order against him. Accordingly, the judge correctly admitted this evidence because its probative value outweighed any prejudice to the defendant. He delivered an appropriate limiting instruction.

4. *Trial judge's exclusion of the detective's evidence and denial of the requested "missing witness" instruction.* The defendant maintains also that the judge wrongly denied the defendant's request to have a police detective testify and incorrectly refused to provide the jury with a missing witness instruction for the detective's absence. Neither ruling amounted to error.

"[A] trial judge has no discretion to permit a witness to appear before a jury for the sole purpose of properly invoking his or her privilege against self-incrimination" because allowing a witness to do so would invite improper juror speculation about the reasons for the witness's invocation of the privilege. *Commonwealth* v. *Gagnon*, 408 Mass. 185, 198 (1990) (footnote omitted). The record shows that the detective would have invoked his constitutional privilege against self-incrimination if called to testify. It demonstrates also that the detective's testimony would likely have been cumulative of Monteiro's. Thus, the judge's denial of the defendant's request to compel the detective to appear was proper.

Finally, we conclude that the judge correctly declined to give a missing witness instruction, "appropriate when a party 'has knowledge of a person who can be located and brought forward, who is friendly to, or at least not hostilely disposed toward, the party, and who can be expected to give testimony of distinct importance to the case,' and the party, without explanation, fails to call the person as a witness." *Commonwealth* v. *Saletino*, 449 Mass. 657, 667-668 (2007), quoting from *Commonwealth* v. *Anderson*, 411 Mass. 279, 280 n.1 (1991). The circumstances of the detective's absence do not fit the specifications of the missing witness instruction.

*Conclusion.* Sufficient evidence showed that the defendant had notice of the restraining order and its terms and that he threatened Monteiro. The judge properly admitted evidence of the defendant's prior abuse of the victim and correctly denied

the defendant's request to call a witness to the stand and give a missing witness instruction. Because we find no error, we affirm the defendant's convictions.

*Judgments affirmed.*

GRASSO, J. (concurring in part and dissenting in part). I agree that the defendant's convictions of threats should be affirmed. I respectfully disagree that the evidence sufficed to establish that he had actual or constructive knowledge of the ex parte restraining order or its terms to support his conviction on that charge.

The dangers faced by those seeking the protection of a restraining order cannot be gainsaid. Indeed, the danger posed to Monteiro by this defendant is graphically set forth by the majority. Nevertheless, before a defendant may be convicted of violating a restraining order, he must have actual knowledge or fair notice of the order and its prohibitions. See *Commonwealth* v. *Welch,* 58 Mass. App. Ct. 408, 409-410 (2003). Here, the defendant had neither.

The defendant was not present in court when the restraining order issued, nor did the police serve the order prior to the violation alleged.[1] See *id.* at 410 (failure to serve order relevant to determination whether defendant possessed knowledge required). Contrast *Commonwealth* v. *Silva,* 431 Mass. 194, 195, 197, 199 (2000) (defendant's presence in court when restraining order issues provides requisite notice); *Commonwealth* v. *Mendonca,* 50 Mass. App. Ct. 684, 688 (2001) (defendant's presence in court and service of original order provide requisite knowledge). Nor did a police officer communicate the existence of the order and its terms to the defendant orally. Contrast *Commonwealth* v. *Griffen,* 444 Mass. 1004, 1005 (2005) (police officer's reading terms of order to defendant via telephone suffices to prove defendant's actual knowledge of order and its terms). The fact that Monteiro told the defendant that he should not be "calling" her because "there's a restraining order" and reminded him of the restraining order in telephone conversations on December

---

[1]The parties stipulated that the restraining order was not mailed to the defendant until December 26, after the events that form the basis of violation.

24 and 25 does not suffice to establish the defendant's knowledge of the order and its terms for purposes of conviction.

Unlike a police officer, a person granted protection under a restraining order is an interested party who has no authority to serve the order, much less advise the subject of the order as to its existence and terms. Compare *ibid.* Indeed, the Legislature has established that service of the order is to be made by "the appropriate law enforcement agency." See G. L. c. 209A, §§ 4, 7, as appearing in St. 1990, c. 403, §§ 4, 8. It is neither safe nor wise to permit the recipient of a restraining order to become the recognized source of the subject's knowledge of the order. Such reliance will make service of the order by authorities a less pressing need, expose the recipient to needless danger, and lead to confusion and misuse.

To the extent that the majority looks to dictum in *Mendonca, supra* at 688, as authority for the proposition that oral advice from the recipient to the subject of a restraining order suffices to establish the subject's actual knowledge, such reliance is misplaced. In *Mendonca,* the defendant's actual knowledge arose because he was present in court when the original order issued and was served subsequently. See *ibid.*[2]

Such is not the case here. The defendant was not in court when the restraining order issued, nor was he presented with a copy of the restraining order by the police (or anyone else) or otherwise provided fair notice of existence of the order or its prohibitions. Contrast *Commonwealth* v. *Delaney,* 425 Mass. 587, 591-593 (1997). To the extent that the defendant may be said to have knowledge of the existence and terms of the order, such proof could only have come through Monteiro's statements made to him over the telephone.

Even assuming that oral communication of the order and its terms from the recipient to the subject may suffice to establish actual knowledge or put the subject on fair notice, I do not

[2]Mendonca made no claim that he was unaware that the order had been extended. See *Mendonca, supra* at 688 n.10. Nor would such a claim have availed him. Because the original order provided notice that it might be extended, Mendonca was also on notice and, with reasonable inquiry, could have learned whether the order had been extended, and its content. See *Commonwealth* v. *Delaney,* 425 Mass. 587, 589-593 (1997); *Welch,* 58 Mass. App. Ct. at 409.

think that the evidence establishes that the defendant had actual knowledge or was put on sufficient notice to make reasonable inquiry prior to the December 25 violation at issue. Compare *Welch, supra* at 410. Monteiro testified that the defendant telephoned around 7:00 or 7:30 P.M. on December 24, asked what she was doing and if she had gone to the police, and threatened to "play dirty." In the course of that conversation, she told him, "What are you doing calling me; there's a restraining order." When he questioned why she would do that after all they had been through, she hung up. Even if the defendant were already aware that Monteiro had gone to the police, that awareness does not also establish that he knew that she had sought a restraining order, that one had issued, or the prohibitions of the order. Even viewed together, the defendant's statements to Monteiro and Monteiro's responses in the December 24 conversation do not suffice to establish that he had actual or constructive knowledge of the existence and terms of the order. Monteiro's bare declaration that there was a restraining order and that he should not be calling her does not, in my view, suffice to establish the defendant's actual knowledge or to put him on fair notice of the existence and terms of the order under penalty of conviction.[3]

Monteiro's description of the December 25 conversation adds little.[4] Beyond stating that she again told the defendant that there was a restraining order, Monteiro provided no other specifics regarding the defendant's knowledge of the restraining order.

Given these deficiencies, and absent the defendant's presence in court when the order issued, service of the order upon him, or communication of the order and its terms by a police officer, the actual knowledge or fair notice of the order and its terms that is requisite for conviction is lacking.

---

[3]To the extent that Monteiro's statements might put the defendant on notice, it is clear that the Boston Municipal Court was not in session at 7 P.M. on December 24, or any time on December 25, had the defendant chosen to investigate the existence of the order or its terms.

[4]To convict the defendant of violating the order by telephoning Monteiro on December 25, he must have had the requisite knowledge prior to making the call or have acquired it during the call and persisted in his contact.