NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-477

COMMONWEALTH

vs.

DAQUON MACK.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial on a five-count complaint, the defendant was convicted of violating an abuse prevention order (209A violation), G. L. c. 209A, § 7 (count one); committing an assault and battery in violation of an abuse prevention order (AB 209A), G. L. c. 265, § 13A (b) (iii) (count five); and threatening to commit a crime, G. L. c. 275, § 2 (count two). The jury acquitted the defendant of strangulation or suffocation, G. L. c. 265, § 15D, and reckless endangerment of a child, G. L. c. 265, § 13L.  On appeal, the defendant raises two issues.  First, he argues that the evidence was insufficient to find him guilty of the 209A violation, as the Commonwealth never introduced a certified copy of the abuse prevention order in

evidence.  Second, he argues that his trial counsel was ineffective for failing to move to strike undisclosed statements of the defendant and failing to impeach the victim on a prior inconsistent statement.  Because we agree that the evidence was insufficient to establish the terms of the abuse prevention order, we reverse the judgment on count one.  Because we also agree that there was sufficient evidence to support a conviction of assault and battery, G. L. c. 265, § 13A (a), as a lesser-included offense of AB 209A, we vacate the judgment on count five and remand that count for entry of a new judgment and resentencing.  In all other respects, we affirm.

Background.  1.  The abuse prevention order.  On October 4, 2020, the victim obtained a New York abuse prevention order against the defendant following a domestic incident.  The order, a "no contact" one, was set to expire on October 4, 2021.  At some point between October 2020 and October 2021, the victim called authorities in New York and asked them to lift the order. The authorities told the victim that she had no control over the order and that the matter was out of her hands.  At some point, the order was extended.  There was no evidence as to what the extended order's terms were, or for how long it was extended.

2.  The assault and the threat.  On February 12, 2022, the victim drove the defendant and their young child to a pharmacy. During the drive, the defendant told the victim that "we will

2

all go down in flames." He screamed at the victim such that she could feel spit landing on her face. As the victim attempted to park her car at the pharmacy, the defendant grabbed the victim's neck with both hands and pulled her head downward. The victim slammed on the brakes and stopped the car until the defendant let go. Once he let go, she parked; the defendant got out of the car; and the victim sped away.

The victim drove to a police station to report the crimes. At the station, the investigating officer searched a nationwide database and found the victim's New York abuse prevention order against the defendant. The investigating officer asked the victim whether she knew she had an active restraining order against the defendant, and she answered yes. The issuing police department in New York sent the investigating officer an electronic copy of the restraining order, which he read. He testified that the order was active and that "all the parameters were enforceable." After his arrest, the defendant stated that "[the victim] disregards [the abuse prevention order] herself. . . . [S]he holds that over my head all the time."

3. The trial. Before trial, the prosecutor disclosed to the defendant, via the criminal complaint and police report, that the defendant had told the victim he would "light[] her car up," which the victim understood to mean lighting her car on fire. The police report also reflected that the victim "said

3

that [the defendant] also had threatened to kill her and set her on fire."  The judge granted the defendant's motions in limine to exclude evidence of prior bad acts and to exclude undisclosed evidence.  At trial, the victim testified to the following:

> A.:  "[The defendant] did say, 'Nobody's gonna get out of the house tonight when we get home.'  He's said things like that in the past, but in this -- so I know what it means.  And this specific night he says, 'When we get back there, nobody's gonna get out of the house.  Nobody's leaving the apartment tonight.'"
>
> Q:  "Okay."
>
> A.:  "Things like, 'We will burn -- we will burn at the flames of glory is something he always says.'  He definitely said that that night, like he would set the house on fire, and that nobody would leave."

Trial counsel objected.

At sidebar, trial counsel told the judge, "I have not heard any of this."  The judge agreed, telling the prosecutor that "we're dealing with potentially a lot of information that is coming out that you don't know, and he doesn't right?  So at this point, we have to limit what she's going to be saying."  Trial counsel requested a corrective instruction.  The judge offered trial counsel the opportunity to draft one but cautioned that "sometimes it backfires because now I'm underscoring it," to which trial counsel responded affirmatively.

After sidebar, the prosecutor resumed her direct examination of the victim:

4

Q.: "[D]id the defendant ever say anything to you about lighting your car up?"

A.: "Yes. He's also poured gasoline on my car."

Q.: "So that evening, did he say that he was going to light your car up?"

A: "No, not that evening. No. He just mentioned that we will all go down in flames."

Trial counsel did not object to this testimony.

Discussion. 1. Sufficiency of the evidence. When reviewing a sufficiency claim, we ask whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (citation omitted). Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). The defendant moved for required findings of not guilty on all counts except the 209A violation. Because the issue of sufficiency was not preserved as to the 209A violation, we review for a substantial risk of a miscarriage of justice. Commonwealth v. Melton, 436 Mass. 291, 294 n.2 (2002). We note that convictions "based on legally insufficient evidence are inherently serious enough to create a substantial risk of a miscarriage of justice." Commonwealth v. McGovern, 397 Mass. 863, 867-868 (1986).

In order to prove a 209A violation, "the Commonwealth must demonstrate that '(1) a valid [abuse prevention] order was

5

entered by a judge and was in effect on the date of the alleged violation; (2) the defendant violated the order; and (3) the defendant had knowledge of the order." Commonwealth v. Dufresne, 489 Mass. 195, 200 (2022), quoting Commonwealth v. Kulesa, 455 Mass. 447, 452 (2009). The Commonwealth must introduce evidence of the terms of the order to prove the second element, namely that the defendant violated the order. See Commonwealth v. Reddy, 85 Mass. App. Ct. 104, 109 (2014) ("particular elements of the order -- including the duration of the order, the conditions that were violated, and the defendant's knowledge of those conditions -- must be established"). Although the "standard method" of proving the terms of a restraining order is to offer a copy of the order in evidence, Commonwealth v. Marrero, 85 Mass. App. Ct. 911, 912 n.2 (2014), other evidence that proves the terms of the order may suffice.

Here, as to the charge of violation of 209A, the jury were instructed they must find,

> "First, that a court had issued an order pursuant to Chapter 209A of our general laws which ordered the defendant to stay away from [the victim]. Second, that such order was in effect on the date when its violation allegedly occurred. Third, that the defendant violated the order by failing to stay away from [the victim]. Fourth, that the defendant knew that the pertinent term of the order was in effect either by having received a copy of the order or by having learned the pertinent terms of the order in some other way."

6

In this case, the jury were instructed that the elements they had to find in order to convict the defendant of AB 209A included

> "that a court had issued an order pursuant to Chapter 209A of our general laws against the defendant ordering him to stay away from [the victim]"; "that the order was in effect at the time of the alleged assault battery [sic]; and . . . that the defendant knew that the pertinent terms of the order were in effect."

We conclude that the Commonwealth did not adduce sufficient evidence to establish the terms of the restraining order as of February 2022, and thus whether it ordered the defendant to "stay away" from the victim. Without knowing the terms of the order, a rational jury could not conclude beyond a reasonable doubt that the defendant violated the order -- a necessary element of the crime. Although the victim testified that the original one-year restraining order was a no contact order, there was no evidence of the order's contents after it was extended. The investigating officer's testimony that the order was "active" and that "all the parameters were enforceable" established that the order existed; however, he did not explain what those parameters were. Nor was there any evidence that this was, at any time, a "stay away" order.[1] Indeed, the words "stay away" appear nowhere in the evidence. A rational fact

---

[1] The instruction saying "stay away" was requested by the prosecutor and ageed to by defense counsel.

finder could not infer the terms of the extended order -- or that it was a stay away order -- absent speculation. See Commonwealth v. Lao, 443 Mass. 770, 779 (2005), S.C., 450 Mass. 215 (2007) and 460 Mass. 12 (2011) ("A conviction may not rest on the piling of inference upon inference or on conjecture and speculation").

The Commonwealth argues that the defendant's postarrest statements proved that the defendant knew the order was in effect when he assaulted the victim. The defendant acknowledged that "he was aware that the order -- the restraining order was in existence," because he felt that "she holds [the restraining order] over my head all the time." These statements show that the defendant was aware of the existence of an active restraining order, but not what it prohibited. Compare Commonwealth v. Melton, 77 Mass. App. Ct. 552, 556 (2010) (victim's statement to defendant -- "[w]hat are you doing calling me; there's a restraining order" -- sufficient to show defendant's knowledge of order that prohibited calling). The jury lacked a critical piece of information; namely, what the terms of the order were. Cf. Commonwealth v. Kurko, 95 Mass. App. Ct. 719, 722 (2019) (reversing conviction of violating harassment prevention order where jury had no evidence of order's terms). Because the terms of the abuse prevention order were necessary to prove the 209A violation and it must have been

8

a stay away order for the jury to convict on that charge in this case, we must reverse the judgment on count one.

The judgment on count five need not be reversed, however, because we agree with the Commonwealth that there was sufficient evidence of the lesser-included offense of assault and battery, G. L. c. 265, § 13A (a). The AB 209A charge contained all the elements of an assault and battery charge. See Instruction 6.140 of the Criminal Model Jury Instructions for Use in the District Court (2019) (defining elements of assault and battery, G. L. c. 265, § 13A); Instruction 6.180 of the Criminal Model Jury Instructions for Use in the District Court (2019) (defining elements of AB 209A). See also Commonwealth v. Torres, 468 Mass. 286, 289 (2014) ("The elements of a lesser included offense are necessarily a subset of the elements of the greater offense"). By convicting the defendant of AB 209A, the jury necessarily found all the elements of assault and battery beyond a reasonable doubt. Accordingly, we vacate the defendant's conviction of AB 209A and remand count five for entry of a new judgment and resentencing for assault and battery, G. L. c. 265, § 13A (a). See Commonwealth v. Waterman, 98 Mass. App. Ct. 651, 654 (2020), quoting Commonwealth v. Sudler, 94 Mass. App. Ct. 150, 156 (2018) ("When there is insufficient evidence to support a conviction, but there is sufficient evidence of a lesser included offense of the crime of conviction, we vacate the

9

conviction and 'remand for entry of a conviction of the lesser included offense and for resentencing'").

2. _Ineffective assistance of counsel._  The defendant argues that his conviction of count two, threatening to commit a crime, must be reversed because trial counsel was ineffective for failing to object to and move to strike the victim's testimony concerning the threats.  Since the defendant raises his ineffective assistance claim for the first time on appeal and did not move for a new trial below, "we will reverse the defendant's conviction[] only if the ineffectiveness 'appears indisputably on the trial record.'"  Commonwealth v. Medeiros, 456 Mass. 52, 61 (2010), quoting Commonwealth v. Zinser, 446 Mass. 807, 811 (2006).

Counsel is ineffective when "(1) 'there has been serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinarily fallible lawyer'; and (2) as a result, the defendant was 'likely deprived . . . of an otherwise available, substantial ground of defence.'"  Commonwealth v. Henley, 488 Mass. 95, 134 (2021), quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).  The burden of proving an ineffective assistance claim is on the defendant.  Commonwealth v. Montez, 450 Mass. 736, 755 (2008).

10

When the ineffective assistance claim is "based on a tactical or strategic decision, the test is whether the decision was 'manifestly unreasonable' when made." Commonwealth v. Kolenovic, 471 Mass. 664, 674 (2015), quoting Commonwealth v. Acevedo, 446 Mass. 435, 442 (2006). Manifestly unreasonable decisions refer only to "strategy and tactics which lawyers of ordinary training and skill in the criminal law would not consider competent." Kolenovic, supra, quoting Commonwealth v. Pillai, 445 Mass. 175, 186-187 (2005).

a. The victim's initial testimony. The victim initially testified that the defendant had told her, "[n]obody's leaving the apartment tonight" and that "we will burn at the flames of glory." Trial counsel objected on the ground that the Commonwealth had not disclosed these statements prior to trial. The judge warned trial counsel that, regarding a curative instruction, "[s]ometimes it backfires because now I'm underscoring it," to which counsel replied, "Yeah."

Trial counsel's decision not to move to strike the victim's initial testimony bore the hallmarks of a strategic or tactical decision. In fact, during the sidebar, he acknowledged the strategic risk of striking the statements. The question is whether the strategy was manifestly unreasonable. We cannot say that it was. Trial counsel could have reasonably concluded that striking the testimony and underscoring it with a curative

11

instruction would have done more harm than good.  See

Commonwealth v. Fredette, 396 Mass. 455, 466 (1985) (failure to

object and request curative instruction not ineffective where

"defense counsel could reasonably have concluded that objection

or further pursuit of the matter in the hearing of the jury

would only add emphasis and importance to the matter").  At the

time the objection was made, the judge and the parties all

expected that, when led by the prosecutor, the witness would

subsequently testify to the threat with respect to the car.

Given that and the minor difference involved in threating to

burn the victim alive in a house instead of a car, it certainly

might make sense not to have the judge repeat either version of

the threat while striking it.  Trial counsel's decision with

respect to striking the victim's initial testimony was not

manifestly unreasonable.

b.  The victim's subsequent testimony.  The defendant

argues that defense counsel should have objected to the victim's

subsequent testimony on the threat -- "He just mentioned that we

will all go down in flames."  He argues that if trial counsel

had objected and moved to strike, the judge would have sustained

the objection and struck the statement, leaving no evidence of

threats (had counsel also asked to have the earlier testimony

struck) and mandating entry of a required finding of not guilty.

See Commonwealth v. Sepheus, 468 Mass. 160, 172 (2014) (trial

12

counsel was ineffective for failing to move to strike nonresponsive answer on cross-examination that supplied Commonwealth with proof of essential element of crime).

A claim for ineffective assistance of counsel based on a failure to object to an error at trial is evaluated "essentially the same as the substantial risk standard we apply to unpreserved errors." Commonwealth v. LaChance, 469 Mass. 854, 858 (2014), cert. denied, 577 U.S. 922 (2015). An ineffective assistance claim made solely on the trial record, like this one, is the "weakest form" of an ineffective assistance claim, because it is "bereft of any explanation by trial counsel for his action and suggestive of strategy contrived by a defendant viewing the case with hindsight" (citation omitted). Commonwealth v. Norris, 462 Mass. 131, 142 (2012).

The defendant's argument flounders at the outset, because there was no error in allowing in the testimony. The judge would not properly have sustained the objection, and the defendant would not have been entitled to a required finding of not guilty.

The Massachusetts Rules of Criminal Procedure require that "[t]he prosecution shall disclose to the defense . . . [a]ny written or recorded statements, and the substance of any oral statements, made by the defendant" (emphasis added). Mass. R. Crim. P. 14 (a) (1) (A), (a) (1) (A) (i), as amended, 444 Mass.

13

1501 (2004). see Commonwealth v. Lewinski, 367 Mass. 889, 902 (1975). The prosecutor disclosed the defendant's statement, as recounted in the police report, that he would "light[] her car up." The victim testified that she understood this to mean that the defendant would light her car on fire, given that he had previously poured gasoline over her car. The police report further recounted that the defendant "also had threatened to kill her and set her on fire." Although the previously-disclosed statements in the police report did not match verbatim the victim's testimony at trial ("we will all go down in flames"), the disclosure captured the substance of the threat. See Black's Law Dictionary 1728 (11th ed. 2019) (defining "substance" as "[t]he essence of something; the essential quality of something, as opposed to its mere form"). Since the prosecutor disclosed the substance of the defendant's oral statements, an objection on that basis would have been overruled. See Commonwealth v. Collins, 470 Mass. 255, 261 (2014) (failure to make futile objection is not ineffective). Trial counsel made a reasonable decision not to object. See Commonwealth v. Johnson, 435 Mass. 113, 131 n.24 (2001), S.C., 486 Mass. 51 (2020) ("[t]he fact that an attempted defense does not work out as well as planned or hoped does not transform the strategy into a manifestly unreasonable one"). Since the defendant fails to illustrate "serious incompetency,

14

inefficiency, or inattention" of his trial counsel -- the first prong of the Saferian test, 366 Mass. at 96 -- trial counsel was not ineffective.

c. Trial counsel's decision not to impeach the victim. The defendant contends that trial counsel was ineffective for not impeaching the victim based on the discrepancy between her statements to police and her testimony at trial. To underscore this argument, the defendant points to trial counsel's effective cross-examination of the witness on other issues, which he argues led the jury to acquit the defendant of strangulation and recklessly endangering a child. Cf. Commonwealth v. Fisher, 433 Mass. 340, 357 (2001) (failure to impeach witness with prior inconsistent statements not ineffective where witness was impeached on other grounds).

Since impeachment of a witness is "fraught with a host of strategic considerations," an ineffective assistance claim based on failure to impeach is "difficult to establish." Fisher, 433 Mass. at 357. "Generally, failure to impeach a witness does not amount to ineffective assistance of counsel." Id. As discussed above, trial counsel's decision not to move to strike the victim's initial testimony sounded in strategy. The judge suggested, which trial counsel acknowledged, that moving to strike the testimony would call the jury's attention to the testimony. So too with cross-examination. Trial counsel could

15

have reasonably concluded that calling attention to the defendant's threat through cross-examination of the victim would backfire.  This is especially true given that the discrepancy between the two recounted threats was minute and trial counsel could have reasonably concluded that impeaching the witness on the discrepancy would be futile.  The defendant fails to meet his burden to satisfy the first prong of the Saferian test.

Conclusion.  Accordingly, on count one of the complaint alleging the 209A violation, we reverse the judgment of conviction, set aside the verdict, and order entry of judgment for the defendant.  On count five alleging AB 209A, the judgment is vacated, the verdict is set aside, and that count is remanded for entry of a new judgment and resentencing for assault and battery, G. L. c. 265, § 13A (a).  The judgment on count two is affirmed.

So ordered.

By the Court (Rubin, Desmond & Singh, JJ.[2]),

Paul Little

Clerk

Entered:  December 2, 2024.

_____

[2] The panelists are listed in order of seniority.

16